KNUDSON ET AL., APPELLANTS, *v.* GRANGE MUTUAL COMPANIES, APPELLEE.

(No. L-85-298—Decided March 21, 1986.)

*Allan L. Mollenkamp* and *Robert M. Scott,* for appellants.

*Cormac B. DeLaney,* for appellee.

RESNICK, J. This cause is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, wherein that court granted a declaratory judgment in favor of appellee.

It is from that judgment that appellants filed a timely notice of appeal asserting the following sole assignment of error:

"The decision of the Trial Court is in error and must be reversed as Plaintiffs are entitled to recover under the underinsured motorist coverage of their own insurance policy pursuant to Sec-

tion 3937.18 of the Ohio Revised Code since the limits of coverage of the tortfeasor's policy, available for payment to Plaintiffs-Appellants, are less than the limits of Plaintiffs-Appellants' own underinsured motorist coverage."

The relevant facts are as follows. Scott Kemley, age thirteen, and Anthony Slone, age fourteen, were riding their bicycles on State Route 51 in Wood County, Ohio, when they were struck by a motor vehicle allegedly driven by one Daniel Holzemer. As a result of the accident, both boys sustained serious bodily injuries and Scott Kemley later died as a result of those injuries. At the time of the accident, Daniel Holzemer had in effect a motor vehicle liability policy of insurance with liability limits in the amount of $50,000 per person/$100,000 per occurrence. Appellant Gordon Kemley, the father of the deceased, had in effect at the time of the accident, a policy of motor vehicle insurance issued by appellee providing for underinsured motorist bodily injury coverage with limits of $50,000 per person/$100,000 per occurrence.

Five separate and distinct claims were filed against Holzemer, the alleged tortfeasor, on account of the injuries suffered by the two boys.[1] On December 27, 1984, appellants filed a complaint for declaratory judgment in the Lucas County Court of Common Pleas, asking the court to determine whether ap-

pellants were covered under the underinsured motorist provision contained in the Kemley policy with appellee. On August 8, 1985, the trial court ruled that appellants were not entitled to recover under the underinsured motorist coverage of the Kemley policy.

The issue presented by the instant appeal is whether underinsured motorist coverage is applicable where the tortfeasor's liability limits under his policy are the same as the insureds', but the amounts actually available for payment to the insured victim from the tortfeasor's insurance are reduced below the tortfeasor's insurance liability limits because of multiple claimants.

The Kemley policy had underinsured motor vehicle liability coverage with limits of $50,000 per person/$100,000 per occurrence. The policy defined an "underinsured motor vehicle" as follows:

"An 'underinsured motor vehicle' * * * is a motor vehicle for which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance; * * *"

Therefore, under the strict language of the Kemley policy, the underinsured motorist coverage is only available where the express limits of liability from the tortfeasor's policy are less than the

---

[1] Two claims are being asserted due to the injuries to Anthony Slone and three claims are being asserted on account of the injuries and subsequent death of Scott Kemley. As to Anthony Slone, one claim is being asserted on his behalf for his pain and suffering for the injuries he sustained and another claim is being asserted by his parents for medical expenses paid by them. As to Scott Kemley, one claim is being asserted by his personal representative for pain and suffering, another claim is being asserted by his parents for loss of services and medical ex-

penses, and the third claim is being asserted by his parents under the wrongful death statute. It is not necessary for this court to determine whether there are only two valid claims available for the injuries and subsequent death of Scott Kemley because for our analysis it does not matter whether there are five claims or four claims arising out of the accident. Therefore, we will not address the issue of whether there are two or three valid claims arising out of Scott Kemley's injuries and death.

applicable limits of the underinsured motorist coverage. Under the terms of the policy, underinsured motorist coverage was not available to appellants. However, this is not the end of our inquiry because the duties and obligations of an insurance company in offering uninsured and underinsured motorist coverages are controlled by R.C. 3937.18. Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of the statute. See *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 23 O.O. 3d 495, 433 N.E. 2d 547, syllabus.

R.C. 3937.18 provides, in pertinent part, the following:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"* * *

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the *limits of coverage available for payment* to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)

It is not explicitly clear under the above-quoted language what type of underinsured motorist coverage is mandated by the statute. Appellee contends that where the stated limits of the tortfeasor's coverage are less than the victim's coverage, then, and only then, is the underinsured motorist coverage applicable. It is appellants' contention that it is not just where the limits of the tortfeasor's coverage are less than the victim's coverage that the victim's underinsured motorist coverage applies but it is also applicable where the amount of the tortfeasor's coverage "available for payment" is less than the limits of the victim's underinsured motorist coverage. In other words, appellants contend that when the amount available for payment from the tortfeasor's insurance coverage to the insured victim is reduced due to multiple claimants to a level less than the victim's coverage, then the victim's underinsured motorist coverage applies. We find merit in appellants' contention.

Ohio statutory law in relation to uninsured and underinsured motorist coverages has undergone extensive change in recent years. Originally, insurance companies were only under an obligation to offer uninsured motorist coverage under former R.C. 3937.18. However, after the legislature realized that some individuals would be better off being injured by a person with no insurance than being injured by a person with some insurance, they adopted the former R.C. 3937.181 which required insurance companies to also offer underinsured motorist coverage. In the most recent amendment to these sections, the legislature combined the provisions for the mandatory offering of uninsured motorist coverage and underinsured motorist coverage under the same code section, namely the present R.C. 3937.18 as partially reproduced, *supra.*

The Ohio Supreme Court clearly articulated the legislature's intent in making the offering of underinsured motorist coverage by insurance companies mandatory. The Supreme Court in *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 389, 18 OBR 440, 443, 481 N.E. 2d 272, 274-275, stated:

"* * * Underinsured motorist coverage was first required by statute after the legislature discovered the 'underinsurance loophole' in *uninsured* motorist coverage — *i.e.,* persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having *no* liability coverage. Thus, the original motivation behind the enactment of R.C. 3937.181(C) was to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." (Emphasis *sic.*)

The above interpretation of the legislature's intent in requiring the offering of underinsured motorist coverage leads us to the conclusion that the legislature intended to require insurance companies to offer a type of underinsured motorist coverage which would provide coverage when the actual amounts available for payment to the victim under the tortfeasor's insurance coverage are less than the victim's underinsured motorist coverage limits. If we were to hold that underinsured motorist coverage is only applicable when the tortfeasor's stated limits of liability are less than the victim's coverage limits, then in certain circumstances a person would be better off being injured by a person with no insurance than by being injured by someone with some insurance and this is not what the legislature intended.[2] Therefore, we are compelled to rule that an insurance company is obligated to offer underinsured motorist coverage that is applicable when the projected amount *available for payment* under the tortfeasor's insurance policy is less than the victim's underinsured motorist coverage limits. Accordingly, the trial court was in error in finding that appellants' underinsured motorist coverage was not applicable and appellants' sole assignment of error is found well-taken.

Upon consideration, we find that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this opinion and

---

[2] If there are four valid claims asserted against the tortfeasor herein and each claim amounts to at least $25,000 apiece, then the insureds would have been better off if their son were hit by an uninsured motorist rather than an individual with some insurance. This is true because if the tortfeasor had no insurance, then, assuming the insureds had two valid claims against the tortfeasor and $50,000 per person/$100,000 per occurrence uninsured/underinsured coverage, they would be able to recover the amounts of their claims up to $50,000 under their uninsured motorist coverage. However, under appellee's viewpoint, if the tortfeasor had insurance with limits of $50,000 per person/$100,000 per occurrence and the victims had $50,000 per person/$100,000 per occurrence uninsured/underinsured coverage, then the insureds would only be able to recover up to $25,000 per claim because with the tortfeasor's overall limit of $100,000, the tortfeasor's insurance company would only pay $25,000 per claim (for four claims) and the victim's insurer would pay nothing under the underinsured motorist coverage. See, generally, *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 10 OBR 490, 462 N.E. 2d 396; *Sexton* v. *State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St. 2d 431, 23 O.O. 3d 385, 433 N.E. 2d 555.

for assessment of costs. Costs to appellee.

*Judgment reversed.*

CONNORS, P.J., and WILKOWSKI, J., concur.