Claro **GONZALES** and Tomasa R. Gonzales, by personal representative, **Plaintiffs–Appellees,**

v.

**MILLERS CASUALTY INSURANCE COMPANY OF TEXAS, a Delaware corporation, Defendant–Appellant.**

No. 87–2189.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1991.

---

Shane A. English (John E. Keithly, Anthony, N.M., on the brief), for plaintiffs-appellees.

Michael J. Condon, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, Chief Judge, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiffs-appellees, Claro Gonzales and the Estate of his deceased wife Tomasa Gonzales, brought this action against Millers Casualty Insurance Company of Texas (Millers) seeking a declaration that they were entitled to underinsured motorist coverage under a Millers automobile insurance policy issued to Claro Gonzales. The district court granted summary judgment on the coverage issue to plaintiffs-appellees in an unpublished Memorandum Opinion and Order and Millers filed a timely appeal. For the reasons stated below, we affirm.

## I

The claim of plaintiffs-appellees for underinsured motorist benefits arises from a head-on collision in Luna County, New Mexico, between an automobile driven by Claro Gonzales and one driven by Michael Woehrl. There were three passengers in the Gonzales vehicle: Tomasa Gonzales, Angelina Gonzales, and Christina Miranda. As a result of the collision, Tomasa Gonzales died, and Claro Gonzales and the two other occupants of the vehicle were injured. The district court's opinion says that Woehrl's negligence was the proximate cause of the accident, and this is undisputed.

At the time of the accident the vehicle driven by Claro Gonzales was insured by Millers. Generally, under the Millers policy, Claro and Tomasa Gonzales were each insured for $75,000 against bodily injury or death caused by an underinsured motorist.[1] Woehrl had automobile liability coverage with Mountain States Mutual Casualty Company (Mountain States) totalling $100,000 per occurrence.

Mountain States disbursed the $100,000 proceeds of Woehrl's liability coverage evenly among Claro Gonzales, the Estate of Tomasa Gonzales, and the two other occupants of the vehicle, receiving releases of their claims against Woehrl. The four thus received $25,000 apiece from Mountain States. Alleging damages in excess of $25,000, plaintiffs-appellees sought compensation under the underinsured motorist provisions of the Millers policy. Millers denied further liability under these policy provisions.

Plaintiffs-appellees commenced this declaratory judgment action against Millers in the District Court for Grant County, New Mexico. Millers removed the action to the United States District Court for the District of New Mexico, where jurisdiction was founded on diversity of citizenship.

---

1. The Millers policy covered three automobiles owned by Claro Gonzales, including the accident vehicle, and provided for underinsured motorist coverage of $25,000 per vehicle. Claro Gonzales paid a separate premium for each vehicle to secure this underinsured motorist coverage. There is no dispute that under New Mexico law Claro and Tomasa Gonzales can individually stack the underinsured motorist coverage on the three vehicles to reach a total maximum coverage amount of $75,000 apiece. See generally Konnick v. Farmers Ins. Co., 103 N.M. 112, 703 P.2d 889, 891 (1985).

Plaintiffs-appellees and Millers both moved for summary judgment on the underinsured motorist coverage question. In particular, the parties contested whether Woehrl was an underinsured motorist under New Mexico law.[2]

The district court ruled in favor of plaintiffs-appellees on the summary judgment issues now before us. Generally the court concluded that where there are multiple claimants to the proceeds of a tortfeasor's liability coverage as here, in determining whether the tortfeasor is an underinsured motorist the court must look to the liability proceeds actually available to the injured insureds, not merely the express policy limits of the tortfeasor's liability coverage.

Thus the district court's construction of New Mexico law held Woehrl an underinsured motorist. The court had previously found that the liability coverage available to Claro Gonzales and the Estate of Tomasa Gonzales under Woehrl's insurance ($25,000 apiece) was less than their respective underinsured motorist coverage ($75,000 apiece). The district court's ruling permitted plaintiffs-appellees to look to Millers to compensate them under the underinsured motorist policy provisions for any additional loss, subject to the coverage limits.[3]

## II

■ We review summary judgment determinations *de novo*, applying the same legal standard as the district court. *E.g., Osgood v. State Farm Mutual Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir.1977). When the moving party has carried its initial burden of alerting the court to the purported absence of a genuine issue for trial, the opposing party may not rest on the averments or denials of its pleadings but, rather, must establish specific triable issues of fact to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875–76 (9th Cir.1987), *cert. denied*, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).

Here there is no argument that summary judgment was procedurally incorrect due to the presence of a genuine issue as to a material fact. Instead, Millers challenges only the legal determination that the plaintiffs Claro and Tomasa Gonzales are entitled to further recovery on their underinsured motorist claim.

## III

■ At the heart of this case is the definition of the term "underinsured motorist" under New Mexico law. The relevant statute provides:

"underinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured [/underinsured] motorist coverage.

2. As noted below in text, the precise question before the district court relative to the underinsured motorist determination is one of first impression in New Mexico. The question was certified to the New Mexico Supreme Court for resolution, but that court declined to answer the certified question. I R., Doc. 35, at 3.

3. Plaintiffs-appellees advanced a distinct argument for summary judgment relative to the underinsured motorist determination. Specifically, they argued that the compensation concerns of N.M.Stat.Ann. § 66–5–301(B) mandated that their underinsured coverage totalling $75,000 apiece be aggregated to equal $150,000 for purposes of determining whether Woehrl was an underinsured motorist. Under this argument, plaintiffs-appellees underinsured motorist coverage would be $50,000 more than Woehrl's liability coverage, and accordingly, he would be an underinsured motorist. In view of its ruling in favor of plaintiffs-appellees on the coverage issue, the district court declined to reach this distinct argument, concluding that it was immaterial. We similarly find no necessity for reaching that issue.

N.M.Stat.Ann. § 66–5–301(B).[4] The district court commenced its analysis of the coverage issue with the language of the statute. It found § 66–5–301(B) to be "potentially ambiguous" as to whether in the multiple claimant context the measure of the tortfeasor's liability coverage—that is, "the sum of the limits of … liability insurance applicable at the time of the accident"— was the amount of the liability proceeds actually available to an injured insured, or the express policy limits of the tortfeasor's liability coverage.

The court turned for guidance to the objectives underlying § 66–5–301(B) and noted that the statute was designed to compensate victims of inadequately insured motorists, and more specifically, to put the injured insured in the same position the insured would have occupied had the tortfeasor had liability coverage equal to the insured's underinsured motorist coverage. According to the district court, in practical terms these objectives of § 66–5–301(B) were furthered in the multiple claimant context by construing the statute so that the measure of liability coverage for purposes of the underinsured motorist determination was the amount of liability proceeds actually available to an injured insured.

Rejecting this construction, said the court, would mean that the Gonzales plaintiffs would have been better off if Woehrl had possessed no liability insurance at all—a result that could not be accepted as logical.[5] Accordingly, purporting to read the language of the statute with reference to the objectives sought to be achieved, the district court concluded that, as to Claro and Tomasa Gonzales, Woehrl was an underinsured motorist.

The question resolved by the district court relative to underinsured motorist coverage in the multiple claimant context is a question of first impression in New Mexico. The New Mexico courts have not spoken authoritatively on the subject.[6] Generally, we must accord at least some deference to the district court's construction of the substantive law of the state in which it sits.[7] *See American Coleman Co. v. Intrawest*

4. Under § 66–5–301(B), the term "uninsured motorist coverage" is read to include underinsured motorist coverage. The Millers insurance policy also provides guidelines for determining who is an underinsured motorist. Specifically, the policy utilizes the term "underinsured highway vehicle" and defines it in language somewhat similar to the language used in defining the term "underinsured motorist" under § 66–5–301(B). *See* I R., Doc. 24, Ex. A. The focus of the litigants' analysis, however, is on New Mexico's uninsured/underinsured motorist statute, for it is undisputed that the language of the statute is ultimately controlling. *See generally Jimenez v. Foundation Reserve Ins. Co.*, 107 N.M. 322, 757 P.2d 792, 794 (1988).

5. Like many states, New Mexico generally mandates that automobiles operated on the state's roads carry minimum amounts of liability coverage. *See generally* N.M.Stat.Ann. §§ 66–5–201.1, 66–5–205.

6. In its ruling on the question of underinsured motorist coverage, the district court relied in part on "actual receipt" or "availability" language in *Schmick v. State Farm Mutual Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (1985). In particular, the district court quoted the following passage from *Schmick:* "[T]he most an insured can receive is the amount of underinsurance purchased for his benefit [which] … amount must be offset by available liability proceeds." 704 P.2d at 1100. According to the

district court, the quoted passage and other language in *Schmick* "indicates that the proper comparison is to the amount *available* to an injured person, not the tortfeasor's policy limits." I R., Doc. 35, at 5 (emphasis in original).

The *Schmick* decision, however, is not dispositive here. There was no multiple claimant situation in *Schmick;* the tortfeasor was found to be underinsured, and the single injured insured received the full limits of the tortfeasor's liability coverage. The major question in *Schmick* was whether the insured could collect both the liability proceeds and the full limits of her underinsured motorist coverage. 704 P.2d at 1093–94. *Cf.* Appellant's Reply Brief, at 5 (noting that "the *Schmick* analysis relied upon by the insureds was applied *because* the tortfeasor was underinsured, not to *establish* the tortfeasor's status as underinsured") (emphasis in original). The New Mexico Supreme Court in *Schmick* made use of "actual receipt" or "availability" language in answering this question in the negative. Generally, the court construed the statute to require the insured to offset liability proceeds collected from the tortfeasor from the insured's underinsured motorist coverage.

7. Recently, we have recognized that our decisions are not entirely consistent as to the proper level of deference to be accorded to a district judge's interpretation of the substantive law of his or her state of residence. *Huffman v. Caterpillar Tractor Company*, 908 F.2d 1470, 1477 n.

*Bank of Southglenn,* 887 F.2d 1382, 1385 (10th Cir.1989); *Corbitt v. Andersen,* 778 F.2d 1471, 1475 (10th Cir.1985).

Upon careful consideration, we conclude that the district court's reading (or, more specifically, prediction) of New Mexico law on the underinsured motorist question is correct, and its summary judgment determination should be upheld. There is no majority view evident in the case law construing similar state statutes.[8] The district court's reading of New Mexico law, however, finds support in a respectable body of authority.[9]

For example, in *Butler v. MFA Mutual Ins. Co.,* 356 So.2d 1129 (La.Ct.App.1978), the Louisiana Court of Appeals found uninsured motorist coverage to exist in a multiple claimant situation where the amount of the tortfeasors' liability coverage actually available to the injured insured (as opposed

to the face value of the coverage) was less than the limits of the insured's uninsured motorist coverage.[10] The court held that the statute at issue "should be construed to mean the *effective* liability coverage," rather than the liability coverage appearing on the face of the tortfeasor's policy. *Butler,* 356 So.2d at 1133 (emphasis in original).

Also, in *Knudson v. Grange Mutual Companies,* 31 Ohio App.3d 20, 507 N.E.2d 1155 (1986), the court noted that the statutory requirement that insurance companies offer underinsured motorist coverage grew out of legislators' desire to avoid a situation where injured insureds would be better off if they were harmed by a motorist with no insurance coverage at all, than one with some coverage. 507 N.E.2d at 1157. Like the district court in the case at bar, the *Knudson* court concluded that adopting a view in multiple claimant situations that

---

19 (10th Cir.1990) (noting the "variety of standards" that have been applied); *see American Coleman Co. v. Intrawest Bank of Southglenn,* 887 F.2d 1382, 1385 (10th Cir.1989). *Compare Rhody v. State Farm Mutual Ins. Co.,* 771 F.2d 1416, 1419 (10th Cir.1985) ("great deference" standard) *with Corbitt v. Andersen,* 778 F.2d 1471, 1475 (10th Cir.1985) ("some deference" standard) *and Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1232 n. 3 (10th Cir.1990) (acknowledging "some deference" standard, but noting that in cases of "pure statutory construction" perhaps less deference is in order). The divergencies in our decisions is exhaustively treated in Goodnight, *Chaos on Appeal: The Tenth Circuit's Local Judge Rule,* 67 Den.U.L. Rev. 515 (1990). As noted there, we will likely have authoritative guidance soon in *Russell v. Salve Regina College,* 890 F.2d 484 (1st Cir. 1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 780 (1990) (certiorari granted to determine whether a party is entitled on appeal to a *de novo* review of a local judge's reading of unclear state law), argued before the United States Supreme Court on November 27, 1990. However, we do not find the variations in standards to be of decisional significance here. Whether viewed with deference or entirely *de novo,* we agree with the district court's views.

8. Millers and plaintiffs-appellees suggest that their respective position with regard to underinsured motorist coverage constitutes the majority view. *See* Appellant's Brief-in-Chief, at 14; Appellee's Answer Brief, at 7. In neither case, however, do the cited authorities support the suggestions.

9. *American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 520–22 (Iowa 1985); *Butler v. MFA Mutual Ins. Co.,* 356 So.2d 1129, 1132–33 (La.Ct.App.1978); *see Knudson v. Grange Mutual Companies,* 31 Ohio App.3d 20, 507 N.E.2d 1155, 1156–58 (1986); J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 5071.45, 5108 (1981). *See also Brown v. Erie Ins. Co.,* 35 Ohio App.3d 11, 519 N.E.2d 408, 409–10 (1986); *State Farm Mutual Auto. Ins. Co. v. Diem,* 358 So.2d 39, 40–41 (Fla.Ct.App.1978).

10. In *Butler,* the statutory definition of "uninsured motor vehicle" embodied the concept of underinsurance; in effect, providing that an underinsured motor vehicle was "an insured vehicle when the liability insurance on it was less than uninsured [/underinsured] motorist coverage carried by an insured." 356 So.2d at 1132. The stated liability coverage of each of the two tortfeasors in *Butler* was equal to or greater than the insured's underinsured motorist coverage. In finding nevertheless that underinsured motorist benefits were available, the *Butler* court looked to the purpose of the uninsured/underinsured statute, observing that:

It is apparent that the legislature intended the insured should be reimbursed by his own insurer in these instances in the amount at least equal to the uninsured [/underinsured] motorist coverage carried by him. Where the liability insurance on the automobile is *ineffective for any reason [e.g., multiple claimants] to pay to the insured this required amount,* then the vehicle should be deemed "uninsured" [/underinsured] for the purpose of resolving recovery of uninsured [/underinsured] protection.

*Id.* at 1133 (emphasis added).

focused on the stated policy limits of a tortfeasor's liability coverage, rather than the liability proceeds actually available to a given insured, would tend to produce the illogical, undesirable situation the legislators sought to avoid. *Id.* at 1157–58.

In addition, the district court's construction here of § 66–5–301(B) squares with the underlying objectives of the statute. The district court correctly observed that the drafters of § 66–5–301(B) sought to ensure that innocent victims of inadequately insured motorists were compensated, and that they were put in the same position they would have occupied had the tortfeasor had liability coverage equal to the insured's underinsured motorist coverage. *See Foundation Reserve Ins. Co. v. Marin,* 109 N.M. 533, 787 P.2d 452, 454 (1990); *Morro v. Farmers Ins. Group,* 106 N.M. 669, 748 P.2d 512, 513 (1988).

In a multiple claimant situation like this one, a tortfeasor's liability coverage may well be inadequate to compensate each injured insured up to the limits of the insured's underinsured motorist coverage and yet, on paper, still equal or exceed the insured's underinsured motorist coverage. With the statute's compensation concern in mind, it was not unreasonable for the district court to construe § 66–5–301(B) so that the measure of a tortfeasor's liability coverage was the amount of liability proceeds actually available to an injured insured, rather than the face amount of the tortfeasor's policy. *See Brown v. Erie Ins. Co.,* 35 Ohio App.3d 11, 519 N.E.2d 408, 409–10 (1986); *Butler,* 356 So.2d at 1133.

Millers advances two principal arguments to the contrary. First, Millers contends that the language of § 66–5–301(B) is unambiguous: it allegedly directs courts to compare the face amount of the tortfeasor's liability coverage against the face amount of the insured's underinsured motorist coverage. The district court allegedly erred by failing to give effect to this unambiguous language. In particular, Millers contends that the district court arrived at its conclusion as to New Mexico's view of the underinsured motorist question by (in effect) rewriting the statute to align it with its underlying objectives—an allegedly

misguided and improper approach. Second, Millers argues that the district court's reading of New Mexico law runs counter to our decision in *Chafin v. Aetna Ins. Co.,* 550 F.2d 575 (10th Cir.1976).

We conclude, however, that Millers' arguments are without merit. The meaning of § 66–5–301(B) is not self-evident in the multiple claimant situation. More specifically, the meaning of the phrase "the sum of the limits of ... liability insurance applicable at the time of the accident" is not self-evident. In the instant case, the district court did not rewrite the statute. Rather, in accordance with New Mexico precedent, the court simply construed § 66–5–301(B) liberally in light of the objectives it was designed to accomplish. *See, e.g., Foundation Reserve,* 787 P.2d at 454; *Chavez v. State Farm Mutual Auto. Ins. Co.,* 87 N.M. 327, 533 P.2d 100, 102–03 (1975). *See also* 2A N. Singer, *Sutherland Statutory Construction* § 58.06 (4th ed. 1984) (noting the "ancient wisdom" that a statute should be interpreted so as to effectuate its purpose) [hereinafter *Statutory Construction* ].

Furthermore, even if the district court's statutory analysis is dubbed a rewriting of § 66–5–301(B), such analysis is not per se improper under New Mexico law. New Mexico courts have held that during the process of statutory interpretation words may be added to a statute or statutory language may be disregarded "if it is necessary to do so to carry out the legislative intent." *National Council of Compensation Ins. v. N.M. State Corp. Comm'n,* 103 N.M. 707, 712 P.2d 1369, 1370–71 (1986); *see Montoya v. McManus,* 68 N.M. 381, 362 P.2d 771, 776 (1961). *See also Statutory Construction, supra,* § 47.38. Here, there is no dispute that a principal objective of the New Mexico legislature in enacting § 66–5–301(B) was compensation of innocent victims of inadequately insured motorists. In practical terms, where there are multiple claimants, the district court's purported rewriting of the statute may be reasonably viewed as necessary to further this objective. Millers' first argument, then, is without merit.

We also reject Millers' second argument because, although *Chafin* is similar to this

case in some respects, we find that it is ultimately distinguishable. At issue in *Chafin* was a question of first impression under New Mexico law: namely, whether a tortfeasor should be considered uninsured where the amount of his or her liability coverage satisfies the requirements of the state's financial responsibility law but the amount of liability proceeds actually available to each injured insured is less than the minimum amount of liability coverage required under the financial responsibility law. *Chafin*, 550 F.2d at 576. The district court found that under such circumstances a tortfeasor should not be deemed to be an uninsured motorist, rejecting a contrary argument by injured insureds which was based on the compensation objectives of New Mexico's uninsured/underinsured motorist statute. We affirmed.

In arriving at our affirmance in *Chafin*, however, we found it significant that the rule advanced by the injured insureds, which would have resulted in the tortfeasor in question being treated as an uninsured motorist, appeared to be the minority view. We found "no indication" there that New Mexico would go against the weight of authority (in other words, the majority view) on the uninsured motorist issue and, accordingly, sustained the district court's reading of New Mexico law. *Id.* at 577. In contrast, there is no majority view on the question of underinsured motorist coverage presented here. The district court's reading of New Mexico law is supported by a respectable body of authority and guided by the underlying objectives of the statute. *E.g.*, *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092, 1095 (1985) (uninsured/underinsured motorist statute to be liberally construed to implement purpose of compensation). Thus, we do not find that *Chafin* controls the disposition of the instant case. In sum, we are convinced that the district court's determination of the underinsured motorist question was correct and accordingly, we AFFIRM.