**MITEK SURGICAL PRODUCTS,
INC., Plaintiff,**

v.

**ARTHREX, INC., Defendants.**

**Civil No. 1:96 CV 00087K.**

United States District Court,
D. Utah,
Central Division.

Sept. 21, 1998.

George F. Pappas, E. Brendan Magrab, Chellis E. Neal, Venable Baetjer Howard & Civiletti LLP, Washington, DC, Brent P. Lorimer, Eric L. Maschoff, Workman Nydegger & Seeley, Salt Lake City, UT, H. Ross Workman, Honolulu, HA, for Mitek Surgical Products.

Craig Metcalf, Barton W. Giddings, Madson & Metcalf, Salt Lake City, UT, Gary M. Hnath, Venable Baetjer Howard & Civiletti LLP, Washington, DC, Charles L Roberts, Workman Nydegger & Seeley, Salt Lake City, UT, Stephen A. Soffen, Ostrolenk Faber Gerb & Soffen, Washington, DC, David E. Killough, Daniel A. Schulze, O'Melveny & Meyers LLP, San Francisco, CA, James E Hartley, Holland & Hart, Denver, CO, John A. Artz, Lyon & Artz, Southfield, MI, for Arthrex, Inc.

Barton W. Giddings, Madson & Metcalf, Salt Lake City, UT, Charles L Roberts, Workman Nydegger & Seeley, Salt Lake City, UT, Stephen A. Soffen, Ostrolenk Faber Gerb & Soffen, Washington, DC, for Arthrex, Inc.

## AMENDED MEMORANDUM OPINION AND ORDER

KIMBALL, District Judge.

This matter is before the court on a number of motions filed by each party. These motions include: Mitek's Motion for Reconsideration of Claim Construction; Arthrex's Motion for Summary Judgement of Non–Infringement; Mitek's Cross–Motion for Summary Judgment of Infringement; Arthrex's Motion for Summary Judgment that Claim 1 of the U.S. Patent No. 4,632,100 (the "100 Patent") is Invalid; Mitek's Cross–Motion for Summary Judgment of Validity; Arthrex's Motion for Summary Judgment that the "100 Patent" is Unenforceable Due to Inequitable Conduct; Mitek's Motion for Partial Summary Judgment on Arthrex's Affirmative Defenses and Counterclaims of Inequitable Conduct; Mitek's Motion for Partial Summary Judgment of Patent Validity; Mitek's Motion for Partial Summary Judgment on Arthrex's Antitrust Counterclaims and Mitek's Motion for Partial Summary Judgment on Arthrex's Affirmative Defenses of Equitable Estoppel and Laches, and Affirmative Defenses and Counterclaims of Inequitable Conduct and Patent Misuse. Oral argument was heard on all motions on June 4, 1998 and the motions were taken under advisement. The Plaintiff was represented by George F. Pappas and Vicki Margolis. The defendant was represented by James E. Hartley and Charles Roberts. Subsequent to oral argument Mitek filed a Motion for Leave to File Supplemental Brief. Mitek also filed its supplemental brief and Arthrex filed its response. Mitek's Motion for Leave to File Supplemental Brief is hereby GRANTED. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties including the supplemental briefs. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following memorandum and order.

### I. BACKGROUND

This matter arises out of a patent infringement dispute concerning suture anchors. Suture anchors are medical devices used in orthopedic surgery to reattach torn or damaged ligaments, tendons, muscles and other soft tissues to bone. These anchors are screw-like devices that have a means of attaching sutures to them. Surgeons implant these anchors by drilling or manually turning them into the bone and then attaching the torn or damaged soft tissues to the anchors with sutures. The anchors then hold the soft tissues against the bone, allowing the tissue to reattach to the bone as it heals.

Plaintiff, Mitek Surgical Products, Inc., ("Mitek") is a Delaware corporation which is

registered to conduct business in Utah and has a manufacturing facility in Logan, Utah. Mitek owns the rights to U.S. Patent 4,632,-100 (" '100 Patent"), a suture anchor invented by Karl Sommers and E. Marlow Goble. Defendant, Arthrex, Inc., ("Arthrex") is also a Delaware corporation, with its principal place of business in Naples, Florida, and Arthrex distributes and sells surgical products in Utah. Arthrex invented two suture anchors that are at issue in this matter, the Fastak and Corkscrew.

On September 13, 1996, Mitek brought an action against Arthrex alleging that Arthrex's Fastak and Corkscrew anchors infringed the '100 Patent. Arthrex discontinued sales of its Fastak and Corkscrew suture anchors, modified their designs, and entered the redesigned suture anchors into the market. Arthrex made no admissions that its suture anchors infringed the '100 Patent.

Prior to the innovations by both parties, the installation of suture anchors required the surgeon to drill a hole into the bone, place the anchor into the hole and then turn it into the bone. This procedure took twenty minutes to pass the suture through the holes drilled into the bone, or used destructive metal staples and screws with pronged washers to attach soft tissue to bone. These methods were time consuming, could damage soft tissue, and often required surgeons to reattach tissue in an accessible, but not the most desirable, location. The suture anchors invented by Mitek are preferred to the previous suture anchors because they do not require pre-drilling, are quicker to install, permit a more accurate placement of the soft tissue to bone, do not damage soft tissues, and are designed so that they do not have to be removed after the tissues have healed.

The '100 Patent suture anchor has a drill means on one end for boring into the bone, and a thread means distal from the drill means that can be inserted into bone so that the anchored suture can be used to reattach soft tissue to bone all in one step. The suture anchor is hollow and sutures are secured inside the body of the anchor with a retention disc. In contrast, Arthrex's Fastak and Corkscrew anchors are solid, one-piece devices that have an eyelet at the trailing end for attaching sutures, and do not have a

separate drill means to hold the devices in the bone.

The first claim of the '100 Patent states:

1. A suture anchor assembly comprising a cylindrically shaped anchor formed or a material suitable for implantation in a human body that includes both a drill means on one end thereof for boring, when turned, a hole in the bone mass, and a thread means that includes a plurality of thread flights formed in the anchor distal from said drill means and to turn into the bone mass following the drill means, means for securing a suture to said anchor to extend therefrom after said anchor is seated in the bone mass; and means for turning said anchor.

'100 Patent, col. 10, lines 12–22. Mitek argues that Arthrex's Fastak and Corkscrew suture anchors infringe on this claim because they are used for the same purpose as the '100 Patent and contain the same or equivalent features as the '100 Patent. Arthrex argues that its Fastak and Corkscrew suture anchors do not infringe on the '100 Patent because, even though they are used for similar purposes, they do not have the same or equivalent features, i.e., Arthrex's anchors do not have a drill tip and they use eyelets to secure the sutures instead of a disk.

## II.  *STANDARD OF REVIEW*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 322, 106 S.Ct. 2548.

In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.) *cert denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). Finally all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

### III. *DISCUSSION*

#### A. *Motion for Reconsideration of Claim Construction*

In an Order dated May 14, 1998, this court construed the claims of the '100 Patent as follows: 1). "Boring, when turned, a hole in bone mass" was defined as "making a cylindrical hole by the removal of material with a rotary tool." The court further held that "[a] drill means does not include a screw or a pin or a nail or a trocar tip or any other object that does not have cutting edges and flutes." (Slip Op. at 5–6). "Thread means that includes a plurality of thread flights formed in the anchor distal from said drill means end to turn into the bone mass following the drill means" was defined to include "thread means that overlap the drill means so long as a greater number of thread means are distal from the drill means." 3). "Means for securing a suture to said anchor to extend therefrom after said anchor is seated in the bone mass" was defined as "a structure having a suture permanently attached to a retention disk positioned internally within the anchor." In construing the claim this court relied on

the claim itself, the specification and the prior art as revealed in the prosecution history. The court did not rely on extrinsic evidence except for a general understanding of the patent.

■ Mitek's Motion for Reconsideration of Claim Construction argues that the court committed errors in its construction of the terms "drill means" and "means for securing." Mitek does not request modifications of the court's definition of "thread means." Mitek argues that the question of whether or not a drill means includes a screw, a pin, a nail or a trocar tip is a question for the jury and not a question of law for the court. This court disagrees. Mitek argued and presented evidence at length to support its contention that a drill means includes a trocar tip, a pin, a nail or a screw and requested that this court construe the term "drill means" to include these devices. Only when this court disagreed with Mitek's definition did it argue that this was an issue for the jury. The conclusion that a drill means does not include objects that do not have cutting edges and flutes is fully supported by the intrinsic evidence. Further, the Federal Circuit has affirmed claim construction rulings that define functions or structures that are excluded from the coverage of a claim. *See, e.g. The Gentry Gallery, Inc. v. The Berkline Corp.*, 134 F.3d 1473, 1477 (Fed.Cir.1998) (term "console" construed to exclude tray unit) and *General American Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed.Cir.1996) (opening "adjacent" to a side was construed to exclude opening adjacent to an "end wall").

■ Mitek further argues that the court committed error in defining "means for securing" to exclude a freely sliding suture. As stated above, this court may properly define functions or structures that are excluded from the coverage of a claim. Mitek also argues that the court may not use the prior art to limit the range of structures that may be equivalent to the structure disclosed in a specification for performing an identified function. Once again, this court disagrees. It is well established that the prior art as cited by the applicant is part of the intrinsic evidence upon which the court must rely to

construe the claims. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir.1996). The prior art relied upon by the applicant "gives clues as to what the claims do not cover." *Autogiro Co. of America v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 399 (1967). The holding that the structure of the means for securing cannot include an eyelet is full supported by the intrinsic evidence. Therefore, Mitek's Motion to Reconsider Claim Construction is denied.

### B. *Cross Motions for Summary Judgment on Infringement*

Arthrex's Motion for Summary Judgment argues that the two modified versions of the Fastak and Corkscrew suture anchors do not infringe Claim 1 of the '100 Patent. Mitek has filed a Cross–Motion for Summary Judgment that the two original and the two modified versions of the Fastak and Corkscrew suture anchors infringe Claim 1.

■ Patent infringement is addressed in 35 U.S.C. § 271(a) which states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Determining whether or not infringement has occurred is a two-step process. First, the claim must be properly construed by the court as a matter of law in order to determine its scope and meaning. Second, a comparison must be made between the claim, as properly construed, and the accused device or process. *See Serrano v. Telular Corp.,* 111 F.3d 1578 (Fed.Cir.1997) and *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581–82 (Fed.Cir.1996). The first step is known as claim construction or claim interpretation and is strictly a question of law for the court. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir. 1995) aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). As stated above, this court construed the claims in an Order dated May 14, 1998. The second step includes a comparison to determine if the accused device literally infringes the patent. To prove literal infringement, every element or limitation in a patent claim must be found in the accused device. *See Laitram Corp. v. Rexnord,* 939 F.2d 1533, 1535 (Fed.Cir.1991). A

device that does not literally infringe a claim may still be found to infringe under the "doctrine of equivalents" if it contains elements identical or substantially equivalent to each element or limitation of the patent claim at issue. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997).

1. Literal Infringement:

■ "Means plus function" claims, which contain language directed to a desired result, (e.g. "drill means," "thread means," "means for securing") are interpreted in accordance with 35 U.S.C. § 112 which reads in pertinent part as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

A means plus function claim is literally infringed when the accused device includes every element set forth in the patent claim and performs the identical function stated in the claim by means of a structure disclosed in the specification. *See Laitram Corp. v. Rexnord,* 939 F.2d 1533, 1535 (Fed.Cir.1991). If the accused device lacks any element of the claim, there is no literal infringement. *See Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1042 (Fed.Cir.1993).

■ In order to literally infringe the '100 Patent, the Arthrex devices must perform the same function, using the same structure described in the patent or an equivalent one. Arthrex argues that its devices cannot infringe the patent because none of the Arthrex suture anchors, including both the original and modified versions, perform the identical function of "boring when turned, a hole in bone mass." None of the Arthrex suture anchors has a structure that is the same as or equivalent to the drill means disclosed in the patent and none of the Arthrex suture anchors have a structure that is the same as or equivalent to the means for securing as disclosed in the patent.

■ Claim one describes the patented device as including "both a drill means on one end thereof for boring when turned, a hole in bone mass, ..." ('100 Patent, col. 10, lines 16–19). In its May 14, 1998 Order, this court defined "drill means" as "a rotary cutting structure having one or more cutting edges and flutes" and further defined "boring, when turned, a hole in bone mass" as "making a cylindrical hole by the removal of material with a rotary tool." The original Fastak and Corkscrew suture anchors had a trocar tip, not a drill means, and the modified Fastak is a screw-like device and the modified Corkscrew has a pointed or conical tip. These structures are not disclosed in the '100 Patent. They do not have cutting edges or flutes and they do not make a cylindrical hole by the removal of material, rather they make a hole by compressing material. *See* testimony of Professor DeVries (T. at 126). Further, no reasonable jury could determine that the Arthrex devices are structurally equivalent to the drill means in the patent. Mitek's own expert, Dr. Richard Caspari, testified that a fluted drill with cutting edges is a "far more efficient" way to make a hole. (T. at 47–48, 69). Trocar tips, screw points, nails and pointed tips are not equivalents to the drill means disclosed in the '100 Patent.

Arthrex further argues that none of its suture anchors has a structure the same as the means for securing disclosed in the patent. Claim 1 describes the patented device as having a "means for securing a suture to said anchor to extend therefrom after said anchor is seated in the bone mass." ('100 Patent col. 10, lines 19–21). In its May 14, 1998 Order, this court defined the "means for securing" claim as "having a suture permanently attached to a retention disk positioned internally within the anchor." (Slip Op. at 8). None of the four Arthrex suture anchors has a structure involving a retention disk positioned internally within the anchor. In each of the Arthrex suture anchors, the suture slides freely through a conventional eyelet. The "means for securing" disclosed in the '100 Patent is not found in any of the Arthrex suture anchors at issue in this case. Further, the eyelet used in the Arthrex suture anchors is not equivalent to the structure of the internal retention disk disclosed in the '100 Patent. Once again, Mitek's own

experts testified that the structure of an eyelet through which a suture slides freely is very different from the structure disclosed in the '100 Patent involving a suture that is permanently attached with a retention disk positioned internally within the anchor. In particular, Dr. Caspari testified that a suture anchor in which the suture is permanently attached and does not slide cannot be used in arthroscopic surgery; an eyelet and sliding suture are necessary for the surgeon to tie a slip knot. (T. at 55–56).

Accordingly, the Arthrex devices do not use the same structure described in the patent or an equivalent one and therefore there is no literal infringement of the '100 Patent.

### 2. Doctrine of Equivalents:

■ The standard for evaluating equivalence under the doctrine of equivalents is different from that under the standard for literal infringement. Even if the allegedly infringing device does not literally meet all of the elements of a claim, infringement may still be found under the doctrine of equivalents. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The doctrine of equivalents prevents the accused infringer from avoiding infringement by making only minor or insubstantial changes to the claimed invention. *See Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420 (Fed.Cir.1997). However, the doctrine cannot "be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *Conopco, Inc. v. May Dept. Stores Co.,* 46 F.3d 1556, 1562 (Fed.Cir.1994) (*citation omitted*). In applying the doctrine, the court considers whether the devices are substantially the same. "Mere colorable differences, or slight improvements, cannot shake the right of the original inventor". *Warner–Jenkinson* at 1517. A product infringes under the doctrine of equivalents "if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (quoting *Sanitary Refrigerator Co. v. Winters (1929)*).

■ The analysis of equivalence under the doctrine of equivalents must involve an element-by-element analysis to ensure that each element of the claim, or its substantial equivalent, is found in the accused device. *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1480 (Fed.Cir.1998). In *Warner–Jenkinson Co.,* the Supreme Court held that:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Id.* at 1049.

■ None of the Arthrex devices perform substantially the same function in substantially the same way as the Mitek devices. None of the Arthrex Suture anchors has a drill means. In its claim construction, this court held that a trocar tip, a screw, a nail or a pin is not a drill means, therefore, the Arthrex devices do not perform the function of drilling, or "boring a hole, when turned, in bone mass." Further, the differences between the Arthrex suture anchors and the drill means disclosed in the '100 Patent cannot be viewed as insubstantial. This is particularly true when one looks at the drill means in conjunction with the eyelet used in the Arthrex devices. The eyelet found in the Arthrex suture anchors cannot be considered an equivalent structure to the means for securing under Section 112. The eyelet cannot be considered an equivalent under the doctrine of equivalents. Mitek's own experts testified that the permanent attachment of a suture to a retention disk positioned internally within the anchor cannot be used for arthroscopic surgery; a suture that slides freely through an eyelet, as is used in the Arthrex devices can be used for arthroscopic surgery. This court agrees with Arthrex that the '100 Patent uses narrow terms and Mitek is bound by those terms. Equivalency does not exist if an element of the patented invention is absent from the accused device, even if the accused device accomplishes the same result. *See Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,* 16 F.3d 394, 398 (Fed.Cir.1994). The Mitek suture anchors have at least two elements that are absent from the Arthrex devices: first, a drill means with cutting edges and flutes that make a cylindrical hole by the removal of material, and secondly, sutures permanently attached to a retention disc positioned internally within the anchor. Further, although there are certain types of surgery in which the Arthrex devices can accomplish the same result as the Mitek devices, as testified to by Mitek's experts, there are a number of situations where the devices are not capable of accomplishing the same result

Mitek argues that infringement under the doctrine of equivalents is not a question of law, but a question of fact which cannot be decided by the court. However, the law is clear that where no reasonable jury could find structural equivalence, the court may properly grant summary judgment. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146 (1997).

### C. *Motion for Summary Judgment on Arthrex's Counterclaim for Inequitable Conduct*

■ Arthrex's first counterclaim requests relief by way of declaratory judgment that the patent is unenforceable due to inequitable conduct.[1] The Federal Circuit recently defined inequitable conduct as the "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). One alleging inequitable conduct must prove the threshold elements of both materiality and intent by clear and convincing evidence. *See Id.* at 1178. Arthrex argues that Dr. Marlowe E. Goble, the principal inventor of the '100 Patent, withheld material information from the patent office, specifically that he had made "public use" or placed "on sale" suture anchors con-

---

1. Arthrex's first counterclaim also requested relief by way of declaratory judgment that the patent is invalid. However, in light of the court's construction of Claim 1, Arthrex has chosen to withdraw its claim of invalidity, leaving only its' claim of inequitable conduct.

taining all of the elements and features of Claim 1 of the '100 Patent more than one year before he filed the patent application. Further, Arthrex argues that the information that Dr. Goble withheld was material and that the information was withheld intentionally. Arthrex rejects Mitek's argument that in order to prevail on a claim of inequitable conduct one must prove intent to deceive. Rather, Arthrex argues that intent may generally be inferred from the facts and circumstances surrounding the applicant's overall conduct. *See Paragon Podiatry Lab., Inc. v. KLM Laboratories, Inc.,* 984 F.2d 1182 (Fed. Cir.1993).

> Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information coupled with an intent to deceive.... Determination of inequitable conduct requires a two step analysis. First, the trial court must determine whether the withheld reference meets a threshold level of materiality. The trial court must then also determine whether the evidence shows a threshold level of intent to mislead the PTO.

*Baxter International, Inc. v. McGaw, Inc.,* 149 F.3d 1321 (Fed.Cir.1998). *(citations omitted).* Although Arthrex is correct that intent need not be proven by direct evidence, rarely will there be a "smoking gun" to prove intent, the standard is still a strict one and "mere gross negligence is insufficient to justify an inference of an intent to deceive the PTO." *Id.* at 1329 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988) (en banc)). Further, *Baxter International* goes on to hold that "In a case involving an omission of a material reference to the PTO, there must be clear and convincing evidence that the applicant made a deliberate decision to withhold a known material reference." *Id.* at 1329.

In the matter at hand, Arthrex alleges that Dr. Goble failed to disclose that he had made "public use" or placed "on sale" suture anchors containing all of the elements and features of Claim 1 of the '100 Patent more than one year before he filed the patent application. Assuming that this was a material fact, the failure to disclose is an omission and therefore there must be clear and convincing

evidence of intent. Arthrex has not presented such evidence. To the contrary, Arthrex has only argued that intent must be inferred from Dr. Goble's omissions. Based upon the evidence before the court, no reasonable jury could find that Dr. Goble intended to deceive the PTO, even when viewing the facts in a light most favorable to Arthrex and assuming that the omission was material. Therefore, Summary Judgment is granted in favor of Mitek on Arthrex's counterclaim for inequitable conduct.

### D. Motion for Summary Judgment on Arthrex's Antitrust Counterclaim

Initially, Arthrex asserted two antitrust counterclaims. The first antitrust counterclaim asserted a violation of Section 1 of the Sherman Act, However, that counterclaim was subsequently withdrawn. The second counterclaim asserted a violation of Section 2 of the Sherman Act, specifically that Mitek had engaged in anticompetitive conduct in furtherance of its attempt to monopolize the suture anchor market by (1) prosecution of an "objectively baseless" patent infringement lawsuit with the subjective intent to interfere directly with the business relationships of Arthrex commonly referred to as a *"Handguards"* claim, and (2) attempting to enforce a patent procured by fraud termed a *"Walker Process"* claim. Based upon the Court's claim construction, Arthrex withdrew, without prejudice, its claim that Mitek knowingly sought to enforce a patent obtained by fraud, therefore narrowing its antitrust counterclaim to the assertion that Mitek has attempted to monopolize the suture anchor market by pursuing the "objectively baseless" claim that the modified Fastak and Corkscrew suture anchors infringe Claim 1.

Under the *Noerr–Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability" *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 50–54, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (citing *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)). Given this broad immunity, a litigant may only proceed with antitrust counterclaims which are based upon the filing of a lawsuit if it "pierces" the presumption that a patent infringement suit is brought in good faith.

**1318**

See *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir.1979), *cert. denied*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). This requires that the claimant establish that the infringement suit is in fact a "sham." *See Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1583 (Fed.Cir.1993).

[10] The Supreme Court has established a two part inquiry to determine whether the "sham exception" strips a given case of its antitrust immunity. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect to succeed on the merits. *See Professional Real Estate*, 508 U.S. at 59–61, 113 S.Ct. 1920. Second, if the litigation is "objectively baseless," the court must determine whether the plaintiff had an improper motive in bringing the infringement action. *See Id.* Only if a challenged litigation is objectively meritless does the court examine the litigant's subjective motivation. *See Id.*

[11] To establish that a lawsuit is objectively baseless, the court must determine, by clear and convincing evidence, whether "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." *Professional Real Estate* at 59–61, 113 S.Ct. 1920. In defining baselessness, the Supreme Court analogized to the probable cause required to avoid civil liability for filing suit. Probable cause is the "reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication." *Id.* at 62–63, 113 S.Ct. 1920 (alterations in original). Under this standard, "[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation" and, for this reason, "a proper probable cause determination irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to immunity." *Id.* at 63, 113 S.Ct. 1920.

[12] Arthrex has not presented clear and convincing evidence to establish that the infringement lawsuit was objectively baseless. Even though this court has found that the Arthrex suture anchors do not infringe Claim 1 of the '100 Patent, this does not necessitate

a finding that the lawsuit was objectively baseless. Under a probable cause standard all that is required is that there be a reasonable belief that there is a *chance* that a claim may be held valid upon adjudication. *See Id.* at 62–63, 113 S.Ct. 1920. The issues before this court are both subtle and complex. Further, two district courts have sharply disagreed over the claim construction of the '100 Patent. *See Mitek Surgical Products, Inc. v. Wright Medical Technology, Inc. and Dr. Kevin R. Stone,* (U.S. District Court N.D.Ca.) (Case No. C 96–3341 FMS). The lawsuit is not objectively baseless and therefore Mitek's Motion for Summary Judgment is granted as to Arthrex's antitrust counterclaim.

Accordingly, it is hereby

ORDERED that Mitek's Motion for Reconsideration of Claim Construction is DENIED. Arthrex's Motion for Summary Judgment of Non–Infringement is GRANTED; Mitek's Motion for Summary Judgment of Infringement is DENIED. Mitek's Motion for Summary Judgment on Arthrex's Counterclaim for Inequitable Conduct is GRANTED; and Mitek's Motion for Summary Judgment on Arthrex's Antitrust Counterclaim is GRANTED. It is further ORDERED that the Clerk of the Court enter an Amended Judgment in accordance with this Order. Each party is to bear its own costs.