MOTORISTS MUTUAL INSURANCE COMPANY, APPELLANT, *v.* ANDREWS ET AL., APPELLEES.

[Cite as *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362.]

(Nos. 91–2214 and 91–2351—Submitted September 23, 1992—Decided December 14, 1992.)

*Carpenter, Paffenbarger, McGimpsey & Lux* and *Earl R. McGimpsey,* for appellant.

*Murray & Murray Co., L.P.A.,* and *W. Patrick Murray,* for appellees.

*Williams, Jilek, Lafferty & Gallagher Co., L.P.A., Thomas W. Gallagher* and *Dale M. Grocki,* urging affirmance on behalf of *amicus curiae,* Ohio Academy of Trial Lawyers.

---

CACIOPPO, J.  The question presented to this court is whether underinsured motorist coverage is available to an insured where the tortfeasor's policy limit is greater than the insured's policy limits but the claims of multiple claimants have resulted in undercompensation of the insured's injuries.  For the reasons which follow, we hold that underinsured motorist coverage is available, and affirm the court of appeals.

The central dispute in the case at bar is whether the accident involved an underinsured motorist within the meaning of R.C. 3937.18(A)(2).  Motorists asserts that Mac's Transport was not underinsured because its policy limit, $750,000, was greater than the Andrews policy limits.  On the other hand, the Andrewses contend that Mac's Transport was underinsured because the amount available for payment to the Andrewses was zero after the policy limit had been paid to Richard Andrews.

In considering this question, we first examine R.C. 3937.18(A)(2), which requires insurance companies to offer underinsured motorist coverage as part of every automobile insurance policy.  This provision states that insurance companies must offer:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, whether the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident.  The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

Motorists asserts that the comparison-of-the-limits approach applied by this court in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, leads to the result that Mac's Transport was not underinsured.  The Andrewses counter that the *Hill* rationale is inappropriate in a case such as this, where the claims of multiple claimants have limited the amount which each injured party can recover.  The Andrewses assert that if the position advanced by Motorists were adopted by this court, the public policy behind requiring underinsured motorist coverage would be circumvented.

This court examined the public policy behind underinsured motorist coverage in *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 389, 18 OBR 440, 443, 481 N.E.2d 272, 274–275:

"Underinsured motorist coverage was first required by statute after the legislature discovered the 'underinsurance loophole' in *uninsured* motorist coverage—*i.e.*, persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having *no* liability coverage. Thus, the original motivation behind the enactment of R.C. 3937.181(C) was to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." (Emphasis *sic*.)

This court reiterated this policy in *Hill, supra,* 50 Ohio St.3d at 245, 553 N.E.2d at 661. Lower courts have also recognized and considered this policy in addressing these issues. See, *e.g., Felber v. Grange Mut. Ins. Co.* (Aug. 28, 1991), Summit App. No. 15003, unreported, 1991 WL 168586; *Wilson v. Grange Mut. Cas. Co.* (Aug. 29, 1989), Franklin App. No. 87AP–1197, unreported, 1989 WL 99417; *Knudson v. Grange Mut. Cos.* (1986), 31 Ohio App.3d 20, 23, 31 OBR 34, 37, 507 N.E.2d 1155, 1157–1158. Simply stated, the well-reasoned public policy behind requiring underinsured motorist coverage is to assure that an injured person receive at least the same amount of compensation whether the tortfeasor is insured or uninsured.

Returning to R.C. 3937.18(A)(2), we must interpret this statute in light of the public policy responsible for its adoption. In *Hill*, this court interpreted R.C. 3937.18(A)(2) to mean that:

"Unless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage. (R.C. 3937.18[A][2], construed and applied; *Wood v. Shepard* [1988], 38 Ohio St.3d 86, 526 N.E.2d 1089, distinguished and explained.)" *Hill, supra,* 50 Ohio St.3d 243, 553 N.E.2d 658, syllabus. In *Hill*, the insured-decedent and the tortfeasor had policies with identical limits of underinsured motorist and liability coverage, respectively; $50,000 per person and $100,000 per occurrence. The decedent's estate had been compensated by the same amount as the limit of the underinsured coverage. Therefore, the estate was not entitled to recover under the underinsured motorist coverage.

The *Hill* rationale is appropriate in a case involving a single claimant. However, *Hill* fails to address the situation where, as in the case at bar, the claims of multiple claimants result in reduction of the amount *available for*

*payment* to the insured below the underinsured motorist limits. Several courts of appeals, including the courts below, have considered this issue, with similar results.

In *Knudson v. Grange Mut. Cos., supra,* 31 Ohio App.3d at 21, 31 OBR at 35, 507 N.E.2d at 1156, the issue before the Court of Appeals for Lucas County was whether underinsured coverage was available where the tortfeasor's liability limits were identical to the insured's, but the amount available for payment to the insured was reduced below the liability limits because of the claims of multiple claimants. The court reviewed R.C. 3937.18(A)(2) and this court's pronouncement of the policy behind requiring underinsured motorist coverage. The court held that the insured was entitled to underinsured coverage. The *Knudson* court stated that "an insurance company is obligated to offer underinsured motorist coverage that is applicable when the projected amount *available for payment* under the tortfeasor's insurance policy is less than the victim's underinsured motorist coverage limits." (Emphasis *sic.*) *Id.* at 23, 31 OBR at 37–38, 507 N.E.2d at 1158.

In *Wilson v. Grange Mut. Cas. Co.* (Aug. 29, 1989), Franklin App. No. 87AP–1197, the Court of Appeals for Franklin County considered the same issue. As in *Knudson,* the claims of multiple claimants resulted in the insured receiving less than the tortfeasor's insurance limits. The *Wilson* court held that the clear language of R.C. 3937.18(A)(2) required the court to consider the amount actually available for payment, and not to consider only the policy limits. The court continued that, "[c]learly, in a situation where the limits of a third party's liability coverage are identical to the limits of the insured's uninsured motorist coverage, the presence of multiple claimants making claims against the third party decreases the *available* limit of the third party's liability coverage to the insured." (Emphasis *sic.*) *Id.* at 8.

We agree with the above-mentioned appellate courts that the clear language of R.C. 3937.18(A)(2) requires a comparison between the amount actually available for payment to an insured and the policy limits of the insured's underinsured motorist coverage. The operative language of R.C. 3937.-18(A)(2) states that "[u]nderinsured motorist coverage * * * shall provide protection * * * where the limits of coverage available for payment to the insured * * * are less than the limits for the insured's uninsured motorist coverage at the time of the accident. * * * *" Reading this statute, in conjunction with the public policy behind its adoption, the inescapable conclusion is that, when determining whether a motorist is underinsured, the *amount actually available for payment* under the tortfeasors's policy must be compared with the insured's underinsured motorist coverage limits. If the amount *available for payment* is less than the insured's underinsured policy

limits, then the insured is entitled to underinsured motorist coverage. This is the only reading of R.C. 3937.18(A)(2) which can give full effect to the General Assembly's stated intent.[2]

Turning to the case at bar, we find that Mac's Transport was an underinsured motorist within the meaning of R.C. 3937.18(A)(2). The decision is achieved by comparing the amount available for payment to the Andrewses, zero, to the underinsured motorist coverage limits, at least $25,000 per person, $50,000 per occurrence. To hold otherwise would place the Andrewses in a better position had they been struck by an uninsured vehicle.[3] This decision also recognizes the importance of the insurance protection which Dennis Andrews sought. Dennis contracted for coverage from his insurer for at least $25,000 per person/$50,000 per occurrence in the event of an accident with an underinsured motorist. Our decision allows the Andrewses to recover that for which Dennis contracted. See *Felber v. Grange Mut. Ins. Co.* (Aug. 28, 1991), Summit App. No. 15003, unreported, at 4–5.

Therefore, for the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., dissents.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting for RESNICK, J.

HOLMES, J., dissenting. I strongly dissent from this court's misinterpretation of *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658. In order to point out how the majority of this court has become misguided with respect to underinsurance coverage, it is necessary to resort to a factual analysis of *Hill* and the present case, and the law applicable to both.

---

2. We note that this is a sound result as underinsured motorist coverage attaches to individuals, not accidents. *Zelko v. Parsons* (1985), 29 Ohio App.3d 302, 306, 29 OBR 400, 405, 505 N.E.2d 271, 275, following *Auto–Owners Mut. Ins. Co. v. Lewis* (1984), 10 Ohio St.3d 156, 158, 10 OBR 490, 492, 462 N.E.2d 396, 399. Therefore, it is appropriate to compare the amount actually available for payment under the tortfeasor's policy to the injured party rather than a strict policy limits comparison. A strict policy limits approach would attach underinsured motorist coverage to the accident, not the individual.

3. Clearly, had Mac's Transport been uninsured, the Andrewses would be entitled to uninsured motorist coverage and would receive Dennis' policy limits. If we were to adopt appellant's position, the Andrewses would be denied coverage. This result would be contrary to the General Assembly's policy for requiring underinsured motorist coverage.

In *Hill*, the tortfeasor had liability coverage of $50,000 per person injured in any one accident and $100,000 per occurrence. The tortfeasor's insurance company settled with the estate of Shaw ("the decedent") and another victim's estate for $50,000 each. The decedent's insurance company, Allstate Insurance Company, provided Shaw with uninsured/underinsured motorist coverage limits of $50,000 per person injured and $100,000 per occurrence. The executrix of the decedent's estate filed a wrongful-death claim with Allstate in order to recover underinsurance. After Allstate denied the claim, the executrix filed a declaratory judgment action. This court ultimately held that:

" * * * [P]ursuant to both the plain meaning of Ohio's underinsurance motorist statute and the unambiguous terms of the subject Allstate policy, no underinsurance motorist coverage was available to the decedent's estate here because the 'limits of coverage available for payment' to the decedent's estate were not 'less than the limits for' the decedent's underinsured motorist coverage 'at the time of the accident.' " *Hill v. Allstate, supra,* 50 Ohio St.3d at 245, 553 N.E.2d at 661.

Moreover, this court stated:

"Therefore, under both the Ohio underinsured motorist statute and the relevant Allstate policy, there plainly can be no underinsured motorist coverage unless, at the time of the accident, the underinsured motorist limits of liability contained in the insured's policy are *greater* than the liability coverage limits of the tortfeasor's policy. Here, that was simply not the case." (Emphasis *sic.*) *Id.* at fn. 3.

Thus, a plain reading of both the underinsured motorist statute and *Hill* would require a tortfeasor's policy to have *less* liability insurance than an insured's underinsured motorist coverage in order to trigger any recovery under the insured's underinsurance policy. Therefore, in reviewing the facts of the case at bar, the emphasis of the inquiry should be on the "limits of coverage available for payment" from the tortfeasor compared to the insured's underinsured motorist coverage "at the time of the accident." R.C. 3937.18(A)(2).

In the present case the insurance covering Mac's Transport, Inc. was a single liability limit of $750,000 with National Indemnity Insurance Company ("National"). Upon a settlement agreed to among *all* claimants, the entire $750,000 was paid to Richard Andrews for his severe injuries. Fairmont Homes, Inc., was also insured by National, and the policy named Mac's Transport as an additional insured. National *settled* the matter for a total of $97,000 to Richard Andrews; $1,000 to Richard's wife, Marian Andrews; $1,000 to Dennis Andrews as administrator of the estate of Nathan Andrews;

and $1,000 to Dennis Andrews as parent and natural guardian of Shannon Andrews.

As father of Nathan and Shannon, Dennis Andrews was insured under a policy issued by Motorists Mutual Insurance Company ("Motorists"), and had uninsured/underinsured policy coverage in the amount of at least $25,000/$50,000. The stipulated facts show that Dennis' policy with Motorists "had uninsured/underinsured motorist coverage with limits *less* than the liability insurance limits of the insurance policy for the tortfeasor." In other words, the tortfeasor's liability policy had coverage *greater* than the insured's underinsured coverage. Motorists brought a declaratory judgment action against appellees seeking a declaration that underinsured motorist coverage in its insurance policy was not available to appellees since the limits of the tortfeasor's liability coverages were greater than the underinsured limits of Dennis' policy. The trial court properly ruled that underinsured motorist coverage was not available to appellees under this court's rationale in *Hill.* The court of appeals reversed the trial court and attempted to distinguish *Hill* from the present case, in that the result of denying recovery to appellees would violate public policy. The court reasoned that since there were no funds available for payment to appellees after the parties had settled with the tortfeasor's insurance company, appellees' underinsurance coverage was triggered, notwithstanding the fact that appellees' underinsured motorist coverage was less than the face amount available under the tortfeasor's insurance policies (which had been depleted by settlement).

Clearly, the facts in *Hill* are not distinguishable from the facts in the present case. In both cases the representatives (of the insureds and their families) settled with the tortfeasors' insurance company. More importantly, the representatives, in the course of their settlements, agreed to share the proceeds from the liability provisions of the tortfeasors' policies. See *Hill,* 50 Ohio St.3d at 243, 553 N.E.2d at 659.

It appears that the majority has simply ignored a comparison of the facts of both cases and has fashioned a new accident insurance policy for all insureds in Ohio. However, the underinsured motorist statute, R.C. 3937.18(A)(2), explicitly provides that coverage is triggered only:

" * * * [W]here the limits of coverage *available for payment* to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are *less* than the limits for the insured's uninsured motorist coverage *at the time of the accident.* * * * " (Emphasis added.)

In analyzing the above provision in R.C. 3937.18(A)(2), the following terminology must be defined:

(1) "available for payment," and

(2) "at the time of the accident."

In reviewing the phrase "available for payment," I have discerned that it can only represent the cumulative amount of all policies "covering persons liable to the insured," as explicitly stated in the statute. The General Assembly may have added this language in order to recognize potential exclusions within liability policies, or split limits in coverage, that would prevent the face amount of a tortfeasor's liability policy from applying to the total amount of the proceeds available to the insured. On the other hand, the phrase "at the time of the accident" simply indicates that the calculation of the limits available for payment under the insured's underinsurance coverage shall be conducted as of the moment the accident occurs. I note that my colleagues apparently have some difficulty determining the legislative intent behind the phrase "at the time of the accident." The majority intimates that the phrase requires insurers to calculate the limits available under the tortfeasor's policy (rather than the insured's policy) at the moment the accident takes place. Thus, if there are several injured parties claiming proceeds under a tortfeasor's liability insurance policy, the insured will be able to seek redress under his or her own underinsurance coverage, rather than be inadequately compensated for his or her injuries as a result of sharing among multiple claimants. I understand the argument that all injured parties should be compensated for their injuries; however, R.C. 3937.18(A)(2) does not provide such a remedy. Instead, the statute indicates that the sum of all the tortfeasor's insurance policies must be *less* than the limits of the insured's uninsured motorist coverage, which is *fixed*, at the time of the accident. The General Assembly's purpose for looking to "the time of the accident" in order to review the limits of the insured's underinsurance coverage reasonably was to ensure that any changes to the policy after the accident would not affect the insured's potential for recovery. It is a leap in logic to imply that the insured should look to *all* sources of recovery, including his or her own underinsurance coverage at the time of the accident, where the statute clearly does not indicate such a result.

In addressing whether insurance companies could set off from underinsurance coverage amounts insureds receive from tortfeasors, this court stated in *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272, paragraph two of the syllabus, that:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the

insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

This result was premised on the fact that "persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having no liability coverage." *James,* 18 Ohio St.3d at 389, 18 OBR at 443, 481 N.E.2d at 274–275. The General Assembly enacted the underinsurance statute to avoid this situation. Thus, an insured should not now be denied recovery in cases where the tortfeasor has minimal liability coverage and the insured has higher liability limits.

Assuming, *arguendo,* that the majority's judicial amendment to R.C. 3937.-18(A)(2) is plausible, I believe the outcome of this case is still unreasonable. In this case appellees were entitled to receive up to $850,000 [4] under the cumulative amount of the tortfeasor's liability policies, but voluntarily settled for $2,000. It is ludicrous to conclude that the General Assembly would allow an insured to settle with a tortfeasor's insurance company in order to trigger his or her own underinsurance coverage. Here, the anomalous result is that the appellees could have received the entire amount of their underinsurance coverage from the tortfeasor's insurance company, but for the fact that they settled with this company in order to benefit other family members not parties to Dennis' insurance policy.

Accordingly, for the foregoing reasons, I would reverse the court of appeals on the authority of *Hill v. Allstate Ins. Co., supra.*

---

4. As noted in the facts, Mac's Transport, Inc. had a single liability limit of $750,000 with National Indemnity Insurance Company. Mac's was also named as an additional insured under Fairmont Homes' policy, from which National settled the matter for an additional $100,000.