Carey M. NIXON, Jr., et al., Plaintiff,

v.

ALL STATE INSURANCE
CO., et al., Defendant.

C–1–92–31.

United States District Court,
S.D. Ohio,
W.D.

Aug. 31, 1993.

Leo Breslin, Cincinnati, OH, for plaintiff.

Thomas Yocum, James Gallagher, Columbus, OH, for defendant.

*ORDER*

CARL B. RUBIN, District Judge.

This matter is before the Court upon the Defendant State Farm's second motion for summary judgment (Doc. No. 34), the Plaintiffs' response (Doc. 35), and the Defendant's reply (Doc. 37). The Parties have also filed a stipulation regarding damages (Doc. 36).

There are no issues of material fact. The facts of this case have been set out in full in this Court's earlier decision. (Doc. 25). There remains only the considerations of law with regard to damages. This Court handed down its original opinion in this matter on the issue of liability on December 15, 1992. The Defendant urges a reconsideration of the liability finding based on an Ohio Supreme Court decision in *Hower v. Motorists Mut. Ins. Co.,* 65 Ohio St.3d 442, 605 N.E.2d 15 (1992) handed down on December 11, 1992. Accordingly, as this decision was determined four days prior to this Court's Order, the Court will reconsider its order in light of that decision and in light of *Motorists Mut. Ins. Co. v. Andrews,* 65 Ohio St.3d 362, 604 N.E.2d 142 (1992), handed down December 14, 1992, one day before this Court's opinion.

*Opinion*

■ A brief discussion of these cases is warranted in this situation. In the *Hower* case, Jacqueline and Ralph Hower were injured in a motor vehicle accident in Maryland on June 20, 1984. The Howers were in a car owned and operated by Thomas F. Swy, who was insured by Buckeye Union Insurance Company ("Buckeye"), with underinsurance coverage limits of $50,000 per person/$100,000 per accident. The accident was caused by the negligence of Ruth Heinzerling, who was insured by Nationwide Insurance Company ("Nationwide"), with liability coverage limits of $25,000 per person/$50,000 per accident. The Howers each carried an insurance policy with Motorists Mutual Insurance Company ("Motorists"), both with underinsured motorist coverage limits of $50,000 per person/$100,000 per accident. Nationwide paid $25,000 to Jacqueline Hower, $10,000 to Ralph Hower and $15,000 to Swy, exhausting the funds available under

the policy limits. Buckeye Union paid $25,-000 to Jacqueline Hower and $40,000 to Ralph Hower, exhausting the available funds under the policy limits less a set off of the amount Nationwide had paid. The Howers then sought to recover from Motorists under the underinsured motorist coverage provision of their policies. Motorists denied coverage on the ground that the policies contained anti-stacking clauses.

This opinion from the Ohio Supreme Court is consistent with their other opinions and is consistent with this Court's opinion of December 15, 1992. The Howers each had collected from Nationwide and Buckeye $50,-000 each and $100,000 total. This is the amount that each had contracted for within their individual policies. To have allowed them to collect from Motorist in this situation would have been contrary to the anti-stacking laws of Ohio and allowed each of them to recover twice the amount they had contracted for. The Ohio Supreme Court determined that the language in the policy (language identical to that in the contract at issue here) was not ambiguous and was a valid anti-stacking provision. The anti-stacking provision is meant to prevent someone from collecting double or triple the maximum amount they insured themselves for and the amount the insurance company agreed to risk for one accident. The Hower's received the maximum amount they insured themselves for and the insurance company was entitled to that set-off. However, that is not the situation here, and thus, *Hower* is distinguishable.

The language of the *Hower* case must be read in conjunction with *Motorists Mut. Ins. v. Andrews, supra.*[1] In the *Andrews* case, Nathan And Shannon Andrews, minor children of Dennis and Anita Andrews, were passengers in a car driven by their Grandfather Richard Andrews on August 27, 1987. The car was involved in an accident with a truck owned by Mac's Transport, Inc. The driver of the truck apparently was at fault. Nathan was killed in the accident, Shannon was injured and Richard was severely and permanently injured as a result of the driver's negligence.

Primary liability insurance was provided by two policies written by National Indemnity Insurance Company ("National"). The first policy, a single liability limit of $750,000, insured Mac's Transport. The second policy insured Fairmont Homes, Inc. owner of the mobile home hauled by Mac's Transport, and the policy named Mac's Insured as an additional insured.

Pursuant to agreement of all the parties, National paid Richard the full $750,000 under Mac's Transport policy. National denied coverage under the Fairmont Homes policy. National filed a declaratory judgment in federal court and eventually settled the claim for $100,000. From the second policy, National paid $97,000 to Richard, and $1,000 each to Richard's wife, Nathan's estate and to Shannon. Finally, Mac's Transport paid $150,000 to Richard for release of all claims against it.

Dennis and Anita Andrews submitted claims to Dennis' own automobile insurer Motorists Mutual Insurance Company ("motorists"), for underinsured motorist coverage for themselves, Shannon and Nathan's estate. The policy limits of the policy were in dispute but the parties agreed that the limit was less than $750,000. Motorists denied underinsured motorist coverage.

The sole issue before the Ohio Supreme Court was whether underinsured motorist coverage was available to an insured where the tortfeasor's policy limit was greater than the insured's policy limits but the claims for multiple claimants have resulted in undercompensation of the insured's injuries. The Ohio Supreme Court first considered O.R.C. § 3937.18(A)(2), which requires insurance companies to offer underinsured motorist coverage. Motorists, in this case, argued that the comparison-of-the-limits approach applied by that court in *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658 (and also in *Hower, supra* ), led to the result that Mac's Transport was not underinsured. The Court considered the public policy be-

1. The Court notes in passing that the Supreme Court of Ohio handed down these two cases within days of each other, each case interpreting the language of the same insurance company's contract, namely Motorist Mutual Insurance Company.

hind the underinsured motorist coverage and once again interpreted the statute in light of the public policy that is to be served by this coverage. The Ohio Supreme Court distinguished *Hill* for the same reason that this Court distinguished *Hower,* namely, that the injured parties had been compensated by the same amount as the limit of the underinsured coverage. Therefore, those parties were not entitled to recover under the other policy. *Andrews,* 65 Ohio St.3d at 365, 604 N.E.2d 142.

However, the Ohio Supreme Court went further in distinguishing *Hill.* "The *Hill* rationale is appropriate in a case involving a single claimant. However, *Hill* fails to address the situation where, as in the case at bar, the claims of multiple claimants result in the reduction of the amount available for payment to the insured below the underinsured motorist limits." *Andrews* at 365–366, 604 N.E.2d 142. In *Wilson v. Grange Mut. Cas. Co.* (Aug. 29, 1989), Franklin App. No. 87AP–1197, 1989 WL 99417, the Court of Appeals for Franklin County held that the clear language of O.R.C. § 3937.18(A)(2) required the court to consider the amount actually available for payment, and not to consider only the policy limits. The court continued that, "[c]learly, in a situation where the limits of a third party's liability coverage are identical to the limits of the insured's uninsured motorist coverage, the presence of multiple claimants making claims against the third party decreases the available limit of the third party's liability coverage to the insured" (Emphasis *sic.*) *Id.* at 8. *Andrews,* 65 Ohio St.3d at 366, 604 N.E.2d 142.

■ The Ohio Supreme Court, adopting the Franklin Court's reasoning held:

> We agree with the above-mentioned appellate courts that the clear language of R.C. § 3937.18(A)(2) requires a comparison between the amount actually available for payment to an insured and the policy limits of the insured's underinsured motorist cov-

erage. The operative language of R.C. 3937.18(A)(2) states that "[u]nderinsured motorist coverage ... shall provide protection ... where the limits of coverage available for payment to the insured ... are less that the limits for the insured's uninsured motorist coverage at the time of the accident...." Reading this statute, in conjunction with the public policy behind its adoption, the inescapable conclusion is that, when determining whether a motorist is underinsured, **the amount actually available for payment** under the tortfeasor's policy must be compared with the insured's underinsured motorist coverage limits. If the amount **available for payment** is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage. This is the only reading of R.C. 3937.19(A)(2) which can give full effect to the General Assembly's stated intent.[2]

In light of the Supreme Court's holding in *Hower* and *Andrews,* the Court finds that its decision of December 15, 1992 is consistent with Ohio insurance law and AFFIRMS its earlier opinion. Accordingly, the defendant's motion is hereby DENIED and the Plaintiffs are awarded damages in the amount of $75,000. *See Stipulation of Damages* (doc. 36).

LET JUDGMENT STAND IN ACCORDANCE WITH THE FOREGOING.

---

**2.** We note that this is a sound result as underinsured motorist coverage attaches to individuals, not accidents. *Zelko v. Parsons* (1985), 29 Ohio App.3d 302, 306, 29 OBR 400, 505 N.E.2d 271, following *Auto–Owners Mut. Ins. Co. v. Lewis* (1984), 10 Ohio St.3d 156, 158, 10 OBR 490, 462 N.E.2d 396. Therefore, it is appropriate to compare the amount actually available for payment under the tortfeasor's policy to the injured party rather than a strict policy limits comparison. A strict policy limits approach would attach underinsured motorist coverage to the accident not the individual.