OPINION
Plaintiff-Appellant Cheryl Clark, Executrix of the Estate of Shane Parker ("Clark"), appeals the decision of the trial court sustaining summary judgment in favor of Mid-Century Insurance Company ("Mid-Century") on the issue of underinsured motorist ("UIM") coverage. Clark's claim arises from a one-car accident in which James Scarpelli was driving a vehicle insured under Clark's automobile policy with Mid-Century. Shane Parker, Clark's son, and Matthew Allen were both passengers in the car. Shane Parker died as a result of the injuries he sustained in the accident. Subsequently, Clark filed a wrongful death and survivorship action on behalf of Shane's estate and the wrongful death beneficiaries: Cheryl Clark, (mother), Richard Parker (father), Danielle Clark (sister), and Makia Parker (brother). We will collectively refer to these parties as "the Appellants."
James Scarpelli's parents carried automobile liability insurance through State Farm with limits of $100,000 per person/$300,000 per accident. James was considered to be an insured under State Farm's policy, which properly limited liability coverage for Shane's estate and his wrongful death beneficiaries to a total of $100,000. The State Farm policy limit was paid out as follows: the mother received $21,887.68, the father received $15,693.84, the sister received $9,500.00, the brother received $15,693.84, $37,224.64 was paid for attorney's fees and costs, and the estate received nothing.
As a result of this settlement by the tortfeasor's insurance carrier, Clark also filed an UIM claim with her own carrier, Mid-Century. The uninsured/underinsured motorist ("UM/UIM") limits on Mid-Century's policy were $100,000 per person/$300,000 per occurrence. Mid-Century denied that any coverage was owed under its policy to Shane's estate or any of the wrongful death beneficiaries.
On October 26, 1998, Mid-Century filed a motion for summary judgment claiming, among other things, that because the UIM limits on its policy were equal to the liability limits on the tortfeasor's policy, the Appellants were not entitled to any recovery. The Appellants responded by arguing that they each had received less than the UIM per-person limit from the settlement and were, therefore, entitled to recover under the Mid-Century policy. Furthermore, Appellants contended that their recovery would only be limited by the $300,000 per occurrence limit, not the $100,000 per person limit.
On December 23, 1998, the trial court sustained summary judgment in favor of Mid-Century, holding that the Appellants were not entitled to any UIM benefits since the Mid-Century UIM limits were the same as the tortfeasor's limits. The trial court then issued a judgment entry on June 30, 1999 clarifying the prior decision, but making no changes to the holding on UIM coverage. The Appellants appeal this decision of the trial court raising the following three assignments of error:
 The trial court erred in granting summary judgment in favor of Mid-Century Insurance Company when the subject policy does not contain language clearly and unambiguously restricting coverage for wrongful death claims to a single per person limit. (Decision and Entry, 12-23-98; Judgment Entry 6-30-99)
 The trial court erred by finding that policy language limiting claims for "loss of consortium" and "injury to the relationship" as well as bodily injury claims to a single per-person limit similarly restricts wrongful death claims. (Decision and Entry, 12-23-98; Judgment Entry 6-30-99)
 The trial court erred by applying limitations of liability contained in a motor vehicle liability policy to restrict the insurer's exposure for underinsured motorist coverage. (Decision and Entry, 12-23-98; Judgment Entry 6-30-99)
 I
After reviewing the decision of the trial court, we find no merit in Appellants' third assignment of error. Appellant argues that the trial court's comparison of the liability portion and the UM/UIM portion of the policy is inappropriate. However, the trial court did not make such a comparison. Instead, the trial court referred to the liability portion of the State Farm policy, which is the tortfeasor's liability insurance. This comparison is valid because Appellants contend State Farm properly limited its liability coverage for their claim to a single person limit, whereas Mid-Century did not properly do so under its UM/UIM coverage. The trial court simply compared the language of the policies in determining that both policies validly limited Appellants' claim to the single per-person limit. Accordingly, Appellant's third assignment of error is overruled.
 II
The first two assignments of error raised by Appellants address the availability of UIM coverage for their loss, and will be addressed together.
An appellate court's review of a summary judgment decision isde novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 10, citingGrafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In reviewing a summary judgment decision, the appellate court must apply the standard found in Civ. R. 56, the same as a trial court. According to Civ. R. 56, a trial court should grant summary judgment only when the following tripartite test has been satisfied: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. As to the issues currently on appeal, there are no genuine issues of material fact. The only issue is whether the law allows Appellants a remedy under Mid-Century's UIM coverage. Therefore, we need only determine whether Mid-Century was entitled to judgment as a matter of law.
The statutory purpose of requiring UIM coverage is to provide "coverage for injured persons who have a legal cause of action against the tortfeasor but who are undercompensated for their injuries because the tortfeasor's liability coverage is insufficient to provide full compensation." Miller v. ProgressiveCas. Ins. Co. (1994), 69 Ohio St.3d 619, 623, citing State FarmAuto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, 400. In this regard, the underinsured motorists statute states:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
* * *
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
R.C. 3937.18(A) (emphasis added). The parties dispute the meaning of the language "amounts available for payment" as used in the statute. Appellants argue the statute allows recovery for UIM benefits even when the tortfeasor's liability limits are equivalent. The basis of this argument is that the phrase "amounts available for payment" specifically means the amount "actually available" for payment from the tortfeasor. By contrast, Mid-Century contends the phrase suggests a limits to limits comparison. For instance, if the tortfeasor's liability limits are the same as the UIM limits, then there can be no recovery. We agree with Appellants to a certain extent.
In our recent case of Estate of Fox v. Auto-Owners Ins., we held that the only interpretation of R.C. 3937.18(A) (2) which comports with statutory public policy is to compare the amount actually available from the tortfeasor with the UIM limits, instead of a limits to limits comparison. (June 12, 1998), Montgomery App. No. 1456, unreported, citing Motorists Mutual Ins.Co. v. Andrews (1992), 65 Ohio St.3d 362, 366-67. Specifically, we found in Fox that public policy required mandatory provision of UIM coverage so that persons injured by an insured tortfeasor would not be placed in a worse situation than those injured by an uninsured tortfeasor. Id. at 6. In Fox, the estate consisted of twelve wrongful death beneficiaries, and received a total combined recovery of $92,500. The Appellant's UIM limit was $100,000 per person/$300,000 per accident. Therefore, depending on the language of the policy in question, the insured/Appellant would have been entitled to at least $7500, i.e., the difference between what was actually available under the tortfeasor's liability coverage, and her UIM limits.[1] Id. Based on Fox, if the actual amount available under the tortfeasor's liability policy in the present case is less than the Mid-Century UIM limit, the insured or insureds on the UIM policy should recover the difference. If not, the whole purpose of UIM coverage would be frustrated.
The Appellants in this case received an aggregate total from the tortfeasor's liability insurance of $100,000, the per-person limit on the policy. The per-person limit on the UM/UIM coverage of the Mid-Century policy was also $100,000. Therefore, under our decision in Fox, Appellants are not entitled to recover if their claims are subject to the "per-person" limit of the Mid-Century policy. The question then becomes whether the Appellants are each
entitled to recover for their individual claims under a separate per-person limit, subject only to the $300,000 per-accident limit, or whether all claims may be restricted to the single per-person limit.
Since October 20, 1994, the General Assembly has specifically allowed an insurance company to limit the recovery for all claims arising out of one person's bodily injury to the single person limit. In this regard, the statute provides:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
R.C. 3937.18(H) (emphasis added). As an initial matter, it is clear from the italicized words that this statute does not require insurance companies to use any magic words in limiting their coverage. However, this does not dispense with the requirement that the contract language be clear and unambiguous. SeeScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,664. In the present case, Mid-Century contends it has complied with this statute and has properly limited all claims arising out of Shane Parker's death to the single person limit.
If an insurance contract is clear and unambiguous, its interpretation is a matter of law to be decided by the court, possibly through summary judgment. Leber v. Smith (1994),70 Ohio St.3d 548, 553. Only when an insurance contract is ambiguous can the ambiguity be resolved in favor of the insured.King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208. In this regard, a policy is only ambiguous if its terms are subject to more than one reasonable interpretation. Hacker v. Dickman
(1996), 75 Ohio St.3d 118, 119-120.
Mid-Century relies on several sections of its policy to be read in pari materia to support the contention that the policy language clearly limits Appellants' claims to the single person limit. First, "bodily injury" is defined as "bodily injury to or sickness, disease or death of any person." Second, in the "Uninsured Motorist" section (which includes underinsured motorist coverage), the policy states:
 We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person.
Further, in the same section, "insured person" is defined as:
You or a family member.
Any other person while occupying your insured car.
 Any person for damages that person is entitled to recover because of bodily injury to you, a family member, or another occupant of your insured car.
There is no dispute in this case that all Appellants are insureds as defined under this section. Finally, under the "Limits of Liability" section, the policy states the following:
 The limits of liability shown in the Declarations apply subject to the following:
 1. The limit for "each person" is the maximum for bodily injury sustained by any person in any one accident. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.
 2. Subject to the limit for "each person," the limit for "each accident" is the maximum for bodily injury sustained by two or more persons in any one accident.
 3. Subject to the law of the state of the occurrence, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the accident. (Emphasis added).
This court previously interpreted identical policy language in Gambert v. Huff (1988), 52 Ohio App.3d 36. In Gambert, the Gamberts' minor daughter, Monica, was struck by an automobile while riding her bicycle. It appears that the torfeasor tendered its liability limits of $12,500. The Gamberts then brought a claim against their UM/UIM carrier, Farmers, for loss of society and services, emotional distress, out-of-pocket medical expenses, and lost earnings resulting from the injury to Monica. They argued that each of them, the mother, father and injured daughter, was entitled to separate "per-person" claims through their UIM coverage, which had limits of $100,000 per person/$300,000 per accident. However, the trial court held that the Farmers policy limited all three claims to a total of $87,500, which was the difference between the UIM per-person limit and the amount tendered by the tortfeasor. Id. at 36-37.
We affirmed the trial court, finding that, taken as a whole, the policy language was unambiguous and clearly limited all losses resulting from bodily injury to one person to the single person limit. Id. In particular, we focused on the language in paragraph 3 of the "Limits of Liability" section, which provided "we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants* * *." Id.
Specifically, we concluded that the words "these maximums" refer to the maximums stated in paragraphs 1 and 2 directly above. Id.
Paragraph 1 refers to the per-person maximum which applies "for bodily injury sustained by any person in any one accident." Paragraph 2 refers to the limit for each accident which applies when bodily injury is "sustained by two or more persons in any one accident." Id.
Based on the reasoning in Gambert, if only one individual sustained bodily injury as defined in the policy, the per-person limit would apply to all claims arising from that bodily injury, regardless of the number of insureds or claims. Clearly, only one insured individual sustained bodily injury in this accident, Shane Parker. So, regardless of how many other insureds there are, or how many other claims they have, the single per-person limit would apply.
Further, although Gambert did not involve a wrongful death claim, we clearly concluded in that case that the policy language in paragraph 3 encompassed all claims that are brought under the UM/UIM coverage in the policy, regardless of the nature of the claim. Appellants argue that the law has significantly changed since Gambert and for this reason, the holding is no longer good law. It is true that insurance law, particularly UM/UIM law, has experienced several transformations since Gambert was decided. However, since the adoption of Senate Bill 20, particularly the codified section, R.C. 3937.18(H), the holding in Gambert is again good law. As we mentioned above, insurance companies are now permitted to limit claims arising out of one bodily injury to a single person limit, like Farmers did in Gambert.
Although Gambert is dispositive, our decision today is also supported by another part of the Mid-Century policy. As we stated above, paragraph 1 of the "Limits of Liability" section provides that "[t]he limit for `each person' is the maximum for bodily injury sustained by any person in any one accident." Again, the only pertinent bodily injury sustained in this accident was the death of Shane Parker. Further, the second sentence of paragraph 1 states: "Any claim for loss of consortium or injury to therelationship arising from this injury shall be included in this limit." It is clear from the wrongful death statute, specifically R.C. 2125.02(A), that only the next of kin may recover for wrongful death. Consequently, the cause of action for wrongful death only exists because of the relationship between the deceased and the beneficiaries. Since an action for wrongful death arises out of the relationship between the decedent and his or her relatives, it is an injury to the relationship as defined by the policy. We agree with the trial court that the second sentence of paragraph 1 simply explains the restriction to a single person limit. It is not a list that excludes any claims which are not specifically mentioned., Appellants argue that the language "injury to the relationship" is ambiguous and should be construed in their favor. One court has agreed with Appellants' position. The Fifth District in Farmers Insurance of Columbus, Inc. v. Atkinson held the same language ambiguous in the context of a wrongful death claim. (Oct. 29, 1992), Stark App. No. CA-8931, unreported. However, the new developments in the law since Atkinson have eradicated that court's reasoning.
In Atkinson, the Fifth Circuit found the language ambiguous for two reasons. First, the court held that the definition of bodily injury could potentially include the "sickness" caused to family members by the death of the individual involved in the accident. Id. at 4. By contrast, twice this year, this court has held that bodily injury, which is defined generally as "bodily harm, sickness, and disease, including death," does not encompass any kind of emotional distress suffered by an insured. See Craigv. Grange Ins. Co. (Nov. 5, 1999), Montgomery App. 17675, unreported; Snell v. Katafias (Mar. 19, 1999), Montgomery App. No. 17440, unreported. In Craig, the family members of the decedent attempted to recover under their UM coverage for emotional distress caused by the death of the father/spouse. We held that the definition for bodily injury did not include emotional distress, nor did it cover post-traumatic stress disorder. SeeCraig, supra. Therefore, the reasoning by the Atkinson court that the definition for bodily injury may include "sickness" to the family members is not valid in our district.
Second, the Atkinson court found that the Supreme Court inWood v. Shepard (1988), 38 Ohio St.3d 86, distinguished between claims such as loss of consortium and statutory claims such as wrongful death. Atkinson, supra at 4. The Fifth District used this argument to distinguish our holding in Gambert and the Sixth District's similar holding in Haukedahl v. Farmers Insurance ofColumbus (Feb. 9, 1990), Lucas App. No. L-89-101, unreported. InWood, the Supreme Court held that all wrongful death beneficiaries had a separate claim subject to their own per person limit, and these separate claims could not be subjected to one single person limit. Wood, supra at syllabus. In its opinion, the Supreme Court distinguished its holding from the prior holding in Dues v. Hodge (1988), 36 Ohio St.3d 46, which allowed an insurance policy to limit recovery for derivative claims arising out of bodily injury to the single person limit. Id. at 91. TheWoods court found that claims arising out of bodily injury may be treated differently than wrongful death, which is a statutory claim. Id.
However, as we mentioned previously, R.C. 3937.18(H) has supplanted this holding in Wood by now allowing insurance companies to limit all claims arising out of one bodily injury to a single per-person limit, including wrongful death claims. The General Assembly does not distinguish between loss of consortium and wrongful death, but instead allows limitation of "all claims resulting from or arising out of any one person's bodily injury, including death." R.C. 3937.18(H) (emphasis added). Consequently, the Atkinson court's reliance on Wood is no longer a legitimate argument for the distinction between wrongful death and loss of consortium claims in UIM cases.
In conclusion, we find the Mid-Century policy issued to Cheryl Clark unambiguously limited all UM/UIM claims resulting from or arising out of one bodily injury to one per-person limit, as permitted by R.C. 3937.18(H). Therefore, the recovery under the UIM coverage of $100,000 is set off by the $100,000 actually recovered by Appellants under the tortfeasor's liability insurance. As a result, the Appellants are not entitled to any recovery under their UM/UIM coverage. Accordingly, all three of Appellants' assignments are overruled.
The judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.
Copies mailed to:
Thomas W. Trimble
Jeffrey A. Swillinger
Matthew J. Smith
Hon. Dennis Langer
[1] The Appellant in Fox personally received $18,500 of the $92,500 paid out under the tortfeasor's liability coverage. Since this court was not provided a copy of the policy indicating who was considered an insured, we remanded the case for a determination whether the Appellant was entitled to $7500 or some other amount according to the policy language.