OPINION
Plaintiffs-appellants, Loren C. Smith, Georgia M. Smith, and Randy A. Smith, individually, and as administrator of the estate of Byron Smith, appeal from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, State Farm Insurance Companies ("State Farm").
According to the stipulations submitted to the trial court, Byron Smith died on May 19, 1996, as a result of a vehicular accident caused by a tortfeasor insured by a single limit $200,000 liability policy. Byron was survived by his parents, Loren C. and Georgia M. Smith, and by a brother, Randy A. Smith, all plaintiffs in this action. All plaintiffs, as well as Byron, were insured by automobile liability policies issued by State Farm.
By order of the Probate Court of Franklin County, the administrator of Byron's estate was granted the authority to settle the wrongful death claim in the amount of $200,000, with distributions to Loren, Georgia, and Randy Smith, each in the amount of $65,592.52. Plaintiffs then sought additional compensation from State Farm, which denied underinsured motorists coverage to Loren, Georgia, and Randy Smith, individually, and further denied "uninsured and medical pay coverage" to the estate of Byron Smith. (Stip. No. 6.)
With State Farm's refusal to compensate plaintiffs under the policies at issue, plaintiffs, on January 16, 1997, filed a declaratory judgment action seeking that the court determine their rights under the policies issued by State Farm, and find plaintiffs have underinsured coverage available to them. Pursuant to a June 12, 1998 agreement among the parties, the case was submitted to the court on briefs, stipulations, and relevant insurance policies, with a specified briefing schedule.
Following full briefing, the trial court issued a decision on February 18, 1999, finding plaintiffs are not entitled to any compensation under the policies State Farm issued to them or the deceased. Plaintiffs filed a motion for reconsideration, which the trial court overruled. Plaintiffs appeal, assigning the following errors:
 I. THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER PLAINTIFFS' MOTION FOR RECONSIDERATION.
 II. THE TRIAL COURT ERRED IN HOLDING THAT STATE FARM ENDORSEMENT 6090MM BECAME PART OF THE LOREN SMITH AND GEORGIA SMITH STATE FARM POLICIES ON MARCH 16, 1995, AND THAT THE ENDORSEMENT BARS THEM FROM RECOVERING UNDERINSURED MOTORIST COVERAGE.
 III. THE TRIAL COURT ERRED IN HOLDING LOREN SMITH AND GEORGIA SMITH WERE NOT ENTITLED TO COVERAGE FROM THE STATE FARM POLICIES ISSUED TO THEM AND FROM BYRON SMITH'S POLICY AND THE TRIAL COURT ERRED IN HOLDING RANDY SMITH WAS NOT ENTITLED TO RECOVER UNDERINSURED MOTORISTS COVERAGE FROM BYRON SMITH'S STATE FARM POLICY.
 IV. IF THE PLAINTIFFS, OR ANY ONE OF THEM, ARE NOT ENTITLED UP TO AN ADDITIONAL $100,000 IN UNDERINSURED MOTORISTS COVERAGE, THEN EACH OF THE PLAINTIFFS IS ENTITLED UP TO AN ADDITIONAL $34,407.48 IN UNDERINSURED MOTORIST COVERAGE.
Plaintiffs' assigned errors essentially raise three issues: (1) whether Am.Sub.S.B. No. 20 applies to the policies at issue, (2) whether Am.Sub.S.B. No. 20 overruled Sexton v. State Farm Mutl. Automobile Ins.Co. (1982), 69 Ohio St.2d 431, and (3) whether underinsured benefits are available under the decedent's policies, given the recovery of $200,000 from the tortfeasor's liability policy.
In Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281, the Supreme Court decided that the statutory law in effect at the time of contracting for insurance or renewing the policy defines the scope of underinsured motorists coverage. Within the parameters of that case, plaintiffs and defendant contest whether the provisions of R.C. 3937.18, enacted through Am.Sub.S.B. No. 20, control the issues presented here.
Am.Sub.S.B. No. 20 (hereinafter "S.B. 20") became effective on October 20, 1994. The parties agree to the following concerning the policies at issue: (1) policy #587-8769-C16-35A was originally issued to Loren and Georgia Smith on March 16, 1993, and was renewed on March 16, 1995 for a new six-month term with endorsement 6090MM added, (2) policy #587-8768-C16-35A was issued to Loren and Georgia Smith on March 16, 1993, and was renewed for a new six-month term on March 16, 1995, with endorsement 6090MM added, (3) policy #599-4838-D27-35A was first issued to Byron Smith for a six-month term on November 7, 1994, with a guarantee period beginning on October 27, 1994, (4) policy #101-8335-C02-35-90 was first issued to Randy Smith for a six- month term on March 2, 1995, with endorsement 6093C.1, (5) policy #101-8324-C02-35 was first issued to Randy Smith for a six-month term on March 2, 1995, with endorsement 6093C.1, and (6) policy #594-9843-C23-35A was first issued to Byron Smith for a six-month period on March 23, 1995.
Applying Ross to the foregoing, a number of the policies are undisputedly controlled by the provisions of S.B. 20. Specifically, policy #599-4838-D27-35A, #101-8355-C02-35, #101-8324-C02-35, and #594-9843-C23-35A were all issued for the first time after S.B. 20 took effect. Accordingly, the provisions of S.B. 20 apply to those policies of insurance.
More problematic are policy #587-8769-C16-35A and #587-8768-C16-35A, both of which were initially issued before the effective date of S.B. 20, were renewed for a new six-month term on March 16, 1995, after the effective date of S.B. 20. Subsequent to the trial court's decision here, the Supreme Court issued its decision in Wolfe v. Wolfe (2000),88 Ohio St.3d 246. In assessing whether a policy is controlled by new statutory language enacted after the issuance of the original policy but before renewal of that policy, the Supreme Court determined that: (1) under R.C. 3937.31(A), every automobile liability insurance policy must have, at a minimum, a guaranteed policy period during which the policy cannot be altered except by agreement of the parties and in accordance with law, (2) the commencement of each policy period required under R.C.3937.31(A) brings into existence a new contract of insurance, regardless of whether the policy is categorized as new or a renewal of an existing policy, and (3) the guarantee period required under R.C. 3937.31(A) is not limited solely to the first two years following the initial issuance of coverage. Id., at syllabus.
Here, both policies that renewed on March 16, 1995, originally had been issued for a two-year guarantee period beginning March 16, 1993. By the renewal on March 16, 1995, a new contract of automobile insurance was issued, despite the fact that the policy was deemed a renewal by State Farm. Wolfe, supra, paragraph two of the syllabus. Accordingly, the renewal, deemed a new policy, then incorporated the provisions of S.B. 20 and rendered those provisions applicable to plaintiffs.
Given the foregoing, the trial court did not err in finding S.B. 20 applies to the policies State Farm issued to plaintiffs and plaintiffs' decedent. Accordingly, the first of plaintiffs' three issues is not well-taken.
Plaintiffs' second issue contests the trial court's determination that because S.B. 20 applies to these policies, Sexton, supra, has been overruled and does not apply to plaintiffs. In Moore v. State Auto. Mut.Ins. Co. (2000), 88 Ohio St.3d 27, the Supreme Court addressed that issue in the context of uninsured coverage and determined that S.B. 20 does not overrule Sexton. While this case involves underinsured coverage, the relevant provisions of R.C. 3937.18(A) governing the two types of insurance are identical. In effect, Moore also has determined that Sexton was not overruled in the underinsured context. Accordingly, plaintiffs' second issue is well-taken, and the trial court erred in holding to the contrary.
Plaintiffs' third issue asserts the trial court erred in finding no additional coverage available under the policies at issue, given the limits of those policies compared to the limits of the tortfeasor's liability policy.
Initially, because S.B. 20 applies to the policies at issue, the provisions of R.C. 3937.18(H) control, and state:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Were there any doubt of the legislature's intention in the language employed in R.C. 3937.18(H), the uncodified law states:
 It is the intent of the General Assembly in enacting division (H) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in its October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, that declared unenforceable a policy limit that provided that all claims for damages resulting from bodily injury, including death, sustained by any one person in any one automobile accident would be consolidated under the limit of the policy applicable to bodily injury, including death, sustained by one person, and to declare such policy provisions enforceable.
Given the legislative permission to collectively subject all claims to a single claim limit, the policies at issue validly do so. Here, plaintiffs received an aggregate total from the tortfeasor's liability insurance company of $200,000, the per person limit on the policy. The per person limit on State Farm's underinsured motorists coverage was $100,000. The question, thus, becomes whether plaintiffs are underinsured within the meaning of R.C. 3937.18(A)(2), given that the limits of each State Farm policy is less than the limits of the tortfeasor's liability coverage.
In Motorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362, syllabus, the Supreme Court stated:
 When determining whether a motorist is underinsured within the meaning of R.C. 3937.18(A)(2), the amount actually available for payment under the tortfeasor's liability insurance policy must be compared with the insured's underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage.
In Andrews, the tortfeasor's policy had a single limit of $750,000 which was undisputedly larger than the limits of the underinsured coverage. Multiple claimants caused the plaintiff in Andrews to receive only $1,000, far less than the limits of the underinsured coverage. The court determined that the purpose of R.C. 3937.18 was "to assure that persons injured by an underinsured motorists would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." Id. at 365. Consistent with that rationale, the Supreme Court interpreted R.C. 3937.18(A)(2) as requiring a comparison between the amounts available for payment and the insured's underinsured limit. "If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage." Id. at 366-367. (Emphasissic.)
At the time of Andrews, R.C. 3937.18(A)(2) stated that "[u]nderinsured motorist coverage * * * shall provide protection * * * where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage * * * at the time of the accident." Since Andrews, R.C.3937.18(A)(2) has been amended through S.B. 20. Nonetheless, under both the prior and S.B. 20 versions of the statute, no automobile policy of insurance may be issued in Ohio without offering underinsured motorist coverage for those instances when the "limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage." Given the Supreme Court's previous interpretation of "available for payment" inAndrews, the legislature's maintaining the same language in the amended version of R.C. 3937.18 suggests that the comparison is not of limits only, but between the underinsured limits and the amounts available for payment under the tortfeasor's policy. Fox v. Auto-Owners Ins. (June 12, 1998), Montgomery App. No. 1456, unreported.
We recognize that Littrell v. Wigglesworth (Mar. 13, 2000), Butler App. No. CA99-05-092, unreported, suggests a different result. We respectfully disagree with the analysis of Littrell for several reasons. Initially, as the Supreme Court noted in Andrews, the purpose of underinsured coverage is to assure that persons injured by an underinsured motorist receive at least the same amount of total compensation they would have received if they had been injured by an uninsured motorist. To compare "limits to limits," as State Farm suggests, would undermine that purpose and possibly put plaintiffs here in a worse position than if the tortfeasor here had been uninsured.
Moreover, we disagree with Littrell regarding the impact of the language change enacted through S.B. 20. Under the former version, R.C.3937.18(A)(2) stated that the "limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.) By contrast, the S.B. 20 version provides that the "policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.) The change in language addresses those instances when, for whatever reason, the insured settled with the tortfeasor's liability carrier for some substantial amount below that available for payment under the liability policy, and then looked to its own underinsured coverage for payment. By eliminating the "actually recovered" language, the amended version requires the insured receive payment of all available amounts from the tortfeasor's liability carrier before seeking underinsured benefits from its own policy. It does not, however, require a "limits to limits" comparison.
Finally, the uncodified law of S.B. 20 does not suggest any legislative intent to overrule Andrews. Rather, it (1) indicates an intent to overrule Savoie v. Grange Mut. Ins. Co., (1993), 67 Ohio St.3d 500, and (2) reiterates the "available for payment" language found in both the amended R.C. 3937.18(A)(2) and in the former version of the statute. SeeMoore, supra (finding support for its holding that Sexton was not overruled by S.B. 20 because the uncodified law failed to mentionSexton, but instead indicated the changes were intended to overruleSavoie). Accordingly, we decline to follow Littrell.
Here, although State Farm's policy limits, as noted, are less than the amount payable under the tortfeasor's policy, the amount "available for payment" to plaintiffs from the tortfeasor's policy may be less than the amount of their coverage under the State Farm policies at issue, depending on who is an insured under each policy. Pursuant to R.C.3937.18(A)(2), the insureds under each policy may recover the difference between the amount of the underinsured coverage provided in the State Farm policy and the amount they collectively recovered through the tortfeasor's policy. Plaintiffs' third issue thus is well-taken, and this matter is remanded to the trial court to determine who is an insured under each policy, how much the insureds under each policy received and how much, if any, they are entitled to under the policies issued by State Farm.
Given the foregoing, plaintiffs' second assignment of error is overruled, but their third and fourth assignments of error are sustained, rendering the first assignment of error moot. App.R. 12(A). The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; case remanded.
GREY and BROWN, JJ., concur.
 GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.